ALBANY,
Dec. 1832.

McElwain
v.
Willis.

---

### McElwain, *appellant,* and Willis, Yardley and others, *respondents.*

To entitle a judgment creditor at law to the aid of a court of chancery to obtain satisfaction of his judgment against the defendant out of *property not liable to be levied upon by execution,* he must shew not only an execution issued but returned *nulla bona,* and no state of facts will excuse such return.

A bill in chancery may be filed to remove a fraudulent or inequitable obstruction or embarrassment to the satisfaction of a judgment by execution; but the bill in such case must distinctly and specifically allege that there is *real estate* which is subject to the judgment, or *personal property* liable to the execution.

APPEAL from chancery. On the 8th November, 1831, the appellant filed a bill in chancery, befor the vice chancellor of the first circuit, stating that on the 14th day of October then

last past, he obtained a judgment in the superior court of the city of New-York against G. G. Willis and W. C. Robinson, for $721,11 ; that he had caused a writ of *fieri facias* to be issued, and that the same had been returned *nulla bona*. That after the commencement of his suit, but before judgment therein, the defendants executed an assignment of their property to G. Allen, S. Baldwin and W. W. Yardley, and on the 7th September, 1831, gave notice to the appellants that they had made such assignment, in trust, to pay the proceeds of the same *pro rata* to such of their creditors as should come in and accept the same, and sign a release to them. That the appellant was informed that by the assignment provision is made for the payment of the assignees of commissions, disbursements and expenses relating to the execution of the trusts created thereby, and of all costs, counsel fees and expenses incurred in and about the defence of any suits then instituted against Willis and Robinson, or which might thereafter be brought in law or equity against them, or which might in any wise concern the trust funds, the defence or prosecution of which the assignees or Willis and Robinson might deem it expedient to undertake; and further, that by the assignment it was made a condition to the coming in under, or deriving any benefit or advantage from the assignment, that the creditors of Willis and Robinson should absolutely release their claims, upon payment of whatever dividends should be allotted to them, however much such dividends might fall short of their respective demands. The appellant charged that at the date of the note on which his judgment was obtained, to wit, on the 19th April, 1831, Willis and Robinson were in a large, extensive and properous business as merchants, in the city of New-York, and that when the note arrived at maturity, to wit, on the 22d August, 1831, they were possessed of *property* sufficient to pay the said note, as well as all other debts due by them ; that at the time of the making and executing of the assignment, to wit, on the 7th September, 1831, Willis and Robinson were in possession of sufficient *funds* and *credit* to pay such debts as were then due and payable, and to carry on their trade and business as formerly, and that so it would appear were the said Willis and Robinson to present a just and full account of their debts and credits, together

with a fair statement of their property, real and personal, at the time of the date and maturity of the note as well as at the date of the assignment. The appellant further charged that the pretended insolvency of Willis and Robinson was without foundation, and that the assignment was made and executed with a view to defeat the judgment of the appellant, and to delay and hinder him and other creditors of Willis & Robinson, and to cover and protect the property of Willis & Robinson for their benefit, and that for that purpose Willis & Robinson applied to and obtained the assent of the assignees, (who are made parties to the suit,) and *executed and delivered the deed of assignment in collusion and fraud.* The bill prays that the assignment may be set aside as fraudulent and void ; that the property remaining in the hands of the assignees unsold, or if sold, the proceeds may be applied in satisfaction of the appellant's judgment, and that an injunction issue, &c. On the 21st Nov. 1831, the appellant, by leave of the court, filed a supplemental bill, reciting in substance the original bill, and stating in addition, that since the filing of the original bill, to wit, on the 16th day of Nov. 1831, the appellant had obtained another judgment in the superior court of the city of N. York, against the same parties, Willis and Robinson, for $694,53 ; that he had caused a writ of *fieri facias* to be issued on the last mentioned judgment, and to be delivered to the sheriff of N.York, returnable in Dec. next after the filing of the bill, but that he has been well assured and believes that the judgment cannot be satisfied by a levy on any property accessible by the sheriff, and that by means of the defendants Allen, Baldwin and Yardley, (the assignees,) the property has been in the first instance placed beyond the access of the sheriff; that they claim to hold the same, by virtue of the assignment, as trustees for the benefit of the creditors of Willis and Robinson, and that the property has subsequently been enjoined by writ of injunction, issued on the prayer in the original bill, and is by virtue thereof under the control of the court ; wherefore he submits that under the circumstances of the case it would answer no beneficial purpose to await the return of the last mentioned writ of *fieri facias,* as of course it must be returned unsatisfied, and concludes by praying the same relief as in the original bill.

Both bills were taken as confessed against the defendant *Robinson*, and were answered jointly by the defendants *Allen* and *Baldwin*. The *original bill* was demurred to by the defendant *Yardley*, and answered by the defendant *Willis*, and the supplemental bill was demurred to by the defendant *Willis*, and answered by the defendant *Yardley*. Yardley demurred to the original bill, for the cause that it did not contain the averments required by the 189th rule of the court of chancery, viz. the allegation that the sum demanded by the appellant was the true sum actually and equitably due, &c.; that Willis and Robinson had equitable interests, things in action, or other property, which could not be reached by execution issued on the appellant's judgment; and that the bill was not exhibited by collusion with Willis and Robinson, &c. Willis' demurrer to the supplemental bill was general, for want of equity. The cause was heard before the vice-chancellor, who in December, 1831, allowed both demurrers as well taken, refused leave to amend, and dismissed both bills as to the defendants Yardley and Willis, with costs. The complainant appealed to the chancellor, before whom the cause was argued, and who in August, 1832, reversed the decretal order of the vice chancellor, and made the following decree : 1. That the demurrer of Willis to the supplemental bill be allowed, and that as to him the *supplemental bill* be dismissed with costs of the demurrer and of the argument thereon ; 2. That the demurrer of Yardley to the *original bill* be allowed, with the costs of that demurrer and of the proceedings thereon before the vice chancellor, but with liberty to the complainant at any time within 60 days to apply to the vice chancellor to amend the original bill in such manner as to comply with the requirements of the 189th rule of the court, and upon such terms and conditions as to the costs of the several parties who had perfected their answers to the same at the time of the decision of the vice chancellor as should be just, and if the amendments were not made within the time limited for that purpose, that the original bill should be dismissed as against the defendant Yardley with costs. In *September*, 1832, the complainant presented a petition to the vice chancellor, praying leave to amend his original bill conformable to the decree

of the chancellor, and on the 17th of the same month the vice chancellor made an order, giving leave to the complainant to amend, according to the prayer of the petition, on payment of the costs of the motion, and the costs of the defendants who had answered the bill, and which had accrued subsequent to the putting in their answers; that the defendants be served with a copy of the amendments gratis, and that all of the defendants, with the exception of Willis, be permitted to file a further answer to the supplemental bill, and that the supplemental bill as to Willis be dismissed. The complainant, instead of availing himself of the order thus made in the month of *October*, 1832, *appealed* to this court, from the decree of the chancellor made in August preceding.

The cause coming on to be heard in this court, and *D. Graham*, jun. of counsel for the appellant, being about to open the agrument—

*B. F. Butler*, of counsel for the respondents, submitted whether the court would permit the cause to be argued, as it appeared from the paper books that the complainant had acquiesced in the decree of the chancellor giving him leave to apply for an amendment to this bill; leave to amend had been asked and granted, and the complainant having made his election of the remedies open to him, and adopted the course suggested by the chancellor, ought to be debarred from prosecuting an appeal; and such had been the decisions of the court in analogous cases. He cited 17 *Johns. R.* 484; 1 *Cowen*, 709; 6 *Wendell*, 636; 8 *id.* 234. If the party was dissatisfied with the order of the vice chancellor, he should have appealed from it, and not stopped in the course he had chosen to adopt, and change his proceedings by appealing from the decree of the chancellor.

*D. Graham, jun.* The complainant could not appeal from the order of the vice chancellor; it being made in the exercise of a discretion as to the imposition of terms on giving leave to amend, such discretion would not be controlled by a court of appeal. The terms attached to the permission to amend were deemed onerous by the complainant, and no in-

jury having resulted to the defendants from the application to amend, the complainant supposes that his right to appeal is not affected by such application. Had he availed himself of the permission to amend, he of course would have been estopped from appealing; but not having done so, it is the same as if no application of that kind had been made; and then, according to the decree of the chancellor, the bill is dismissed as against the defendant Yardley. At all events, there has been no acquiescence in the decree dismissing the supplemental bill as to the defendant Willis; and as to that part of the decree, the right to appeal cannot be questioned.

Mr. Justice SUTHERLAND. The complainant having applied for and obtained leave to amend the original bill, his election of remedies is consummated, and he cannot now exercise the right of appeal. He cannot have both remedies. The right to amend he has secured; the order is open, and he may, at his pleasure, avail himself of it. The complainant has submitted to the decree, has acted under it, and obtained an advantage. It cannot be permitted to a party in a case of this kind, to ascertain the practical effects upon his rights by one course of proceeding, and then, when dissatisfied with the result, to adopt another. The case of *Brooks* v. *Hunt*, 17 *Johns. R.* 484, is much in point to the question now before the court, although that case is not so flagrant as the present. There the defendant, after obtaining leave to sue out an *audita querela*, prosecuted a writ of error, which was quashed on the ground that the application for the *audita querela* was a waiver of the previous proceedings in the cause. There no proceeding was had under the *audita querela*; here the leave to amend was not only asked, but acted upon, and the action of the court was consummated, so that the party may at any moment, by complying with the terms imposed, have the full benefit of his application. The appeal therefore from the decree of the chancellor, as it respects the demurrer of Yardley, ought to be dismissed. The CHIEF JUSTICE and Mr. Justice NELSON expressed their full concurrence in the opinion delivered by Mr. Justice Sutherland.

By Mr. Senator EDMONDS. The order of the chancellor which is appealed from sustains the demurrers put in to the original and supplemental bills, but with liberty to the complainant, at any time within 60 days, to apply to the vice chancellor to amend the original bill, &c. " upon such terms and conditions, as to the costs of the several parties who had perfected their answers to the same at the time of the decision of the vice-chancellor, as may be just." Upon this order, the complainant had his election either to affirm the order and make his application to the vice-chancellor, or to deny its justness and appeal to this court for relief. But could he avail himself of both these remedies? Could he at the same time impeach the order, and yet seek to avail himself of its provisions? He contends that he could do so, and accordingly, before entering his appeal, he made the application which the order permitted. If that application had been denied by the vice-chancellor, or if it was granted upon terms different from the conditions of the chancellor's order, or upon terms which were unjust or oppressive, those facts would justify a second resort to the chancellor, but not an appeal to this court. After the experiment of that application, was made, and not till then, he made his appeal to this court, and would seem to be less dissatisfied with the order appealed from than with the order which he applied for; and now the simple question is whether he has not waived his right of appealing to this court by his previous application to the vice-chancellor. I apprehend that he has, and that such is the settled practice of this court. In the case of *Brooks* v. *Hunt*, 17 *Johns. R.* 484, Brooks moved the supreme court to set aside a *fi. fa.* on the ground of his discharge from his debts, which the court denied. He then moved for leave to issue an *audita querela*, which was granted. From the decision on the first motion, Brooks brought a writ of error. *Henry*, for defendant in error, moved to quash the writ on two grounds, one of which was that the plaintiff in error, by applying for his remedy by *audita querela*, had waived his right to a writ of error. The chancellor who deliverd the opinion of the court, said that the plaintiff in error had waived his right, by his subsequent application to the supreme court for an *audita querela*, in which suit he might have

ALBANY,
Dec. 1832.

McElwain
v.
Willis.

a record and a review of the question by this court; and he could not conceive of a more decided case of a waiver of the first motion, and of the rule of the supreme court upon it, than this renewed application to the same court for the writ of *audita querela*. The waiver of all objection, in the case before us, to the order appealed from, appears to me to be of a character as decided. In both cases the judgment complained of is acquiesced in until another remedy is sought, with this difference: that in the one case the granting the *audita querela* did not necessarily grow out of the decision of the motion to set aside the *fi. fa.*, and was not therefore necessarily affirming that decision; but in the case at bar, the application to the vice-chancellor did necessarily proceed from the objectionable order, and was a direct affirmance of it, and could not have been made, unless the order was to be deemed effectual and valid.

In the case of *Atkinson* v. *Manks*, in error, 1 *Cowen*, 709, Mr. Justice Sutherland, in delivering his opinion, in which the whole court concurred, says that the plaintiff in error is precluded from objecting to the order of reference by having acted under it. If that order established principles or gave instructions to the master which he thought erroneous, he should have appealed from it at once instead of prosecuting the reference. After having tried the practical operation of those principles and instructions upon his rights, it is too late for him to object to them. So in the case of *Kane* v. *Whittick* in error, 8 *Wendell*, 234, Mr. Justice Sutherland, in delivering an opinion in which a majority of the court concurred, repeats and enforces his language used in the preceding case, and adds, that a party ought not to be permitted to lie by and subject his antagonist to the expense and delay which frequently attend a reference, and then, upon the coming in of the master's report, object to the principles upon which the reference had been directed to be conducted. Is not this reasoning equally strong in its application to this case? The complainant has tried the practical operation of the principles of the chancellor's order, upon his rights, and is it not too late for him now to object to them? He has laid by and subjected his antagonist to the expense of the application to the vice-

chancellor, and shall now be permitted to object to the principles upon which that application was grounded? In the case of *Pinney* v. *Gleason*, in error, 9 *Cowen* 635, cited by the appellant, Mr. Lovett for the defendant, moved to quash the writ of error, on the ground that the opposite party had proceeded in the common pleas, and then brought his writ of error to the judgment of the supreme court, which had been given before the proceedings in the common pleas, and contended that he had made his election of his tribunal and was concluded by it. But Jones, chancellor, in delivering the opinion of this court, which was adverse to the motion, puts the decision upon the ground, that the proceedings of the plaintiff in error in the common pleas were not voluntary; that he proceeded to the trial in that court with reluctance, and under a rule of that court obtained by his adversary, and that all was a consepuence of a decision of the supreme court, as it was followed out and enforced by the defendant in error. This case proceeds upon and sanctions the general rule established in the preceding cases, but creates an exception in favor of a party who proceeds in both remedies, by the coercion of his antagonist. In this respect that case and the one now under consderation are widely different. The complainant M'Elwain was entirely free, either to affirm or appeal from the order of the chancellor. Having elected the former, he has waived his right of coming into this court, and his appeal ought to be dismissed with costs as to the defendant Yardley; but as his application to the vice chancellor related only to Yardley, he has not thereby waived his right as to the defendant Willis, and his appeal against Willis ought to be sustained.

This being the unanimous opinion of the court, the appeal as to the decree of the chancellor in respect to the demurrer of Yardley was dismissed.

*D. Graham, jun.* for appellant, now proceeded to argue the appeal taken from the decision of the chancellor on the demurrer of *Willis* to the supplemental bill, which he said presented the same questions which would have arisen on the decision of the demurrer of Yardley to the original bill, had

ALBANY,
Dec. 1832.

McElwain
v.
Willis.

the appeal not been dismissed in respect to him. The counsel reviewed and commented upon the decisions in *Bayard* v. *Hoffman*, 4 *Johns. Ch. R.* 450, *Brinkerhoff* v. *Brown, id.* 671, *M'Dermott* v. *Strong, id.* 687, *Spader* v. *Davis & Hadden*, 5 *Johns. Ch. R.* 280, and the same case in the court for the correction of errors, 20 *Johns. R.* 554, and also upon the decision in the case of *Donovan* v. *Finn and others*, 1 *Hopkins*, 59, and insisted that the provisions in the revised statutes, 2 *R. S.* 173, § 38 *and* 39, were mere legislative sanctions to the doctrine of *Chancellor Kent* in the cases of *Bayard* v. *Hoffman, Brinkerhoff* v. *Brown, M'Dermott* v. *Strong* and *Spader* v. *Davis and Hadden ;* that a court of chancery has the power to aid a creditor to obtain a discovery and possession of the equitable interests of his debtor which are beyond the reach of an execution at law. He contended that the bill in this case was founded upon the established jurisdiction of chancery in matters of fraud, and steered entirely clear of the statute giving bills to judgment creditors to obtain discovery or possession of equitable or other property not accessible by execution. Fraud in the making and execution of the assignment is distinctly and positively charged. It is a bill therefore not to reach property not tangible by an execution, but to set aside a conveyance operating as a fraudulent obstruction to an execution; and the appellant having issued his execution properly filed his bill, not being bound to wait until its return. *Beck* v. *Burditt*, 1 *Paige*, 305. The decision of the chancellor proceeds on the assumption, that it is not alleged in the supplemental bill that there was any property on which the appellant obtained a lien by the issuing of the execution. In this, it is supposed, the chancellor erred. In the bill it is expressly alleged that the judgment cannot be satisfied by a levy on *any property accessible by the sheriff*, and that by the acts of the assignees, the *property has been placed beyond the access of the sheriff.* These averments must be considered as applying to property upon which a lien had been obtained by the issuing of the execution, and such as the sheriff might have levied upon but for the obstructions interposed ; the allegations are in substance that property liable to execution has been withdrawn by the assignment.

*B. F. Butler,* for the respondents. Allowing the conclusions of the counsel to be correct, that the *revised statutes* are a mere declaration of the law on the subject of the powers of the court of chancery in cases of this kind, still the appellant cannot claim the benefit of of it, as he has failed to shew an execution returned *unsatisfied,* which the cases to which he has referred absolutely require as a pre-requisite to the interference of a court of equity. Nor can the bill be sustained as a bill to remove a fraudulent or inequitable obstruction to the satisfaction of a judgment, for the want of proper and sufficient allegations that the defendants had property on which the judgment was a lien, or which could have been sold under the execution of the appellant. He contended that there was no express averment in the bill that there was *any property* out of which the judgment of the appellant could be satisfied. All there is on the subject is to be found in the paragraph referred to by the opposite counsel, which speaks of *property* not accessible by the sheriff, and that *the said property* has been placed by the assignees beyond the access of the sheriff; but whether the property referred to is property subject to execution, is not alleged. Property may include goods and chattels, but it does not necessarily include goods and chattels subject to execution, and the court will not by implication give them such a character for the purpose of sustaining its jusrisdiction. The allegations in the bill on this subject were most material, for without them a court of equity would have no jurisdiction; and where averments are made, upon which depend the jurisdiction of the court, they must be made distinctly and positively, and nothing must be left to inference or conjecture.

*Graham,* in reply, admitted that if an answer shall be put in, and it shall turn out in proof that the property assigned consisted of choses in action, or other property not subject to execution, the appellant must fail; but he contended that the allegation is sufficiently broad and explicit to authorize proof of the character of the property; and if so, the demurrer cannot be sustained, 1 *Johns. Cas.* 427; and that the rules of pleading are not as strict in chancery as at law.

The counsel for the appellant in his opening argument insisted that the deed of assignment, executed by Willis and Robinson, was void and fraudulent as against creditors on account of its terms and provisions, and was answered by the counsel for the respondents ; but as no decision was had upon the questions arising upon the assignment itself, only a note of the cases cited and commented upon by counsel is given. The counsel for the *appellant* cited 5 *Cowen,* 547 ; 2 *Paige,* 175 ; 14 *Johns. R.* 463 ; 6 *Conn. R.* 277. The counsel for the *respondents* commented upon the cases quoted on the other side, and cited 15 *Johns. R.* 588, 20. *id.* 442, 5 *Johns. Ch. R.* 329, 3 *Price,* 6, 4 *Mason's R.* 230, and 4 *Wash. C. C. R.* 232, as containing a review of all the English cases on the subject.

The following opinions were delivered :

By Mr. Justice NELSON. The only question left for examination and review is as to the correctness of the decision of the court below upon the demurrer to the supplemental bill. Whether the assignment of the property of the defendants Willis and Robinson to the assignees, the other defendants, was legally fraudulent or not, on the ground that some of the trusts created therein were incompatible with the rights of the creditors, need not now be examined or decided, because the original bill, which is substantially incorporated in the supplemental bill, contains an express and positive averment of fraud in fact in the assignment, and which, for the purpose of this decision is admitted by the demurrer.

The assignment then being fraudulent, and in judgment of law conveying no interest in the property of the assignors so far as the right of the creditors were concerned, was the complainant in a situation at the time of the filing of his bill, entitling him to the aid of the court of chancery in enforcing the collection of his debt out of the property ? The solution of this inquiry will be found to depend upon the view the court take of the object, language and scope of the bill.

If there could have been any doubts heretofore as to the extent to which the creditor must pursue his remedy in a court

of law, before he could claim the interposition of the equitable powers of the *court of chancery* to aid him in the collection of his debt out of the assets of the defendant, *not liable to be levied upon by an execution,* the revised statutes, 2 *R. S.* 173, § 38, should be considered as having settled them ; the execution must not only be issued, but be returned unsatisfied by the officer. Such had been, I believe, the uniform course of decision in the court of chancery in this state before the above enactment ; it is a sanction of its correctness. The ground upon which the jurisdiction of the court rests in such cases is, that the legal remedy has been exhausted without satisfaction of the judgment, and certainly the best evidence of the fact is the official return of the sheriff that no goods or chattels, lands or tenements can be found, out of which he can levy the debt by virtue of the execution. Upon any other view, the question whether there was property subject to an execution or not, would be open to be litigated by the parties in every proceeding of the kind in question, and to be decided by the court upon the testimony produced. The return of the officer is now considered conclusive, and if the defendant is injured by his misconduct, the law affords an ample remedy.

It is said that the complainant has accounted for the non-return of the execution, by charging in the bill facts which shew that it would be mere matter of form. Admitting the fact to be so, it cannot avail him under this view of his case. If the court of chancery, before the enactment in the revised statutes, in the liberal exercise of its equitable powers, and in its practice of disregarding matters of form, and placing its relief upon the substantial merits of the case, might have deemed itself warranted in dispensing with the return of the execution upon the strength of the matters set forth in the bill, since those statutes no such liberality or practice can be indulged. It would be a virtual repeal of the provision under consideration, which in express terms requires the return of the execution unsatisfied by the sheriff preliminarily to the relief. On this ground, then, the demurrer is well taken, if the bill is to be viewed as filed to reach property of the defendants not subject to be levied on by an execution. It is

also well taken for a non-compliance with the 189th rule of the court of chancery.

There is another class of cases besides the one already noticed, in which the aid of the court of chancery may be invoked in behalf of the judgment creditor in the collection of his debt. It is to remove some fraudulent or inequitable obstruction interposed by the defendant to the collection of the judgment, independently of which the remedy would have been ample at law. In such cases the property, out of which the judgment creditor is seeking to satisfy his debt, must be subject to the judgment if real, and to the execution if personal property. The jurisdiction of the court rests upon the right or title of the complainant to the property in question acquired by the proceeding at law upon the judgment or execution, and consequently the return of the latter by the officer is not only not essential, but would be fatal to the relief. The only ground of objection to the remedy sought, under this aspect of the case, is the want of a sufficient allegation in the bill that the property, out of which the complainant seeks to collect his debt, was subject to his judgment or execution. There is no express averment that the defendants had any real property, and whether the personal property was liable to execution or not, is left wholly to inference or conjecture. As this fact is essential to give jurisdiction to the court, it should have been specifically and formally alleged ; and without it, no right to the remedy sought is shewn in the bill. It is a well settled principle in pleading that the facts which give jurisdiction to the court, and when that is shewn, give a right or title to the particular relief prayed for, must be plainly and succinctly stated in the bill ; and if not, the defendant may demur. *Cooper's Pl.* 5, 181. The allegation that the personal property of the defendants was liable to be levied on by execution, was not only essential to give jurisdiction, but constituted a part of the title of the complainant to the relief sought in this case. I have looked carefully through the bill to ascertain if there are any averments which will fairly meet this objection within the above principle of pleading, and am satisfied there are none. It is alleged that after the com-

mencement of the suit at law, and before judgment, the defendants Willis and Robinson executed a pretended assignment or conveyance of their *property* to the other defendants; but what that property was, its nature or species do not appear. It is again alleged that at the time of making and executing the assignment, the defendants Willis and Robinson were in possession of sufficient *funds* and *credit* to pay such debts as were then due, and to carry on their trade and business as formerly; and that so it would appear upon a just and full account of their debts and credits, together with a fair statement of their property, *real* and personal at the time of the assignment. This is the only instance in which real property of the defendants is mentioned or alluded to in the bill, and is here certainly not set forth in that direct and positive manner required by the rules of good pleading, when its existence constitutes the foundation of the suit. It is alluded to incidentally by the pleader, for the purpose of sustaining the direct and positive allegation that the defendants, at the time of the assignment, were in possession of sufficient funds and credit to pay their debts and carry on their business as formerly, and for nothing else. Besides, if the pleader relied upon the fact that the defendants were in possession of real estate upon which the judgment would have been a lien if the assignment had not been interposed, with the view to sustain the jurisdiction of the court not only the existence of the real estate should have been alleged, but it should have been set forth with such particularity as would have shewn that the judgment might attach, or its lien should have been expressly averred. It is the lien of the judgment which gives jurisdiction, when the creditor is seeking to collect his debt out of the real estate. So far as regards the terms *property, funds, personal property*, &c. mentioned in the bill, they may all be satisfied, if the defendants Willis and Robinson possessed choses in action, or equitable interests, not tangible by execution, to reach which species of property as has already been shewn, the execution must not only have been issued, but returned unsatisfied. And in every other instance in which personal property is mentioned or alluded to, whether it was liable to execution or

not, is left wholly to implication. The bill states that by means of the assignment no property was accessible by the sheriff, but whether it would be or not, the assignment out of question, is only a matter of inference; it might or might not be. It is a rule in the construction of pleadings, that where the language is of doubtful or equivocal import, it shall be taken most strongly against the pleader, for the reason that it was in his power to have made it clearer. Admitting, therefore, that the terms or language used in the bill might possibly be construed to include personal property liable to execution, yet as they leave the question doubtful, and may or may not be so construed, the decision should be against the complainant. It has already been seen that the difference between the two constructions is material, and changes the foundation and nature of the remedy, and consequently in a degree the nature of the defence. Under such circumstances it would be as unjust to the defendants as it would be a violation of the rules of good pleading, to permit the complainant at pleasure to give such a construction to his bill as would suit the exigency of the case. The material facts and allegations in it should be clearly and unequivocally set forth, so as to apprize the defendant of what he is to defend against. It is no hardship, but the interest of both parties, and a convenience to the court, to require from the complainant a statement of his case in proper form, and in a manner so clear and intelligible as to be understood by the defendant and the court, without being compelled to resort to doubtful construction. This is the object of all pleadings, and a departure therefrom should be under the penalty of a demurrer.

In every view of the case the demurrer is well taken. If it was designed as a creditor's bill, under the revised statutes, it is defective in not showing that the remedy at law was exhausted by a return of the execution unsatisfied. This was essential to give jurisdiction to the court, and cannot be dispensed with. If as a bill filed under the common law powers of the court to remove an impediment in the way of a perfect remedy at law, interposed fraudulently or inequitably by the debtor, then it should have clearly shewn that there was property upon which the judgment was or might have been a lien if

real, or the execution if personal.    One or the other of these facts was essential to the jurisdiction and remedy, and should not have been left to inference or conjecture.    I am therefore in favor of affirming the decree of the chancellor.

By Mr. Senator TRACY.    In the present state of this appeal, the only question upon which the judgment of this court is required is, whether the chancellor decided correctly in confirming that part of the decree of the vice chancellor which allowed the demurrer put in by the respondent Willis to the supplemental bill of the complainant, and dismissed that bill as to him with the costs of the demurrer and of the argument thereon.

On the argument the counsel occupied a good deal of time, and displayed much ingenuity and learning on a question supposed to arise, whether the deed of assignment from Willis and Robinson to the other respondents was not, from its terms and provisions, fraudulent and void as against their creditors.    But the agitation of this question was uncalled for, and the research and argument in respect to it unnecessary, inasmuch as the fraudulent design of the assignment is explicitly alleged in the bill and admitted by the demurrer; the complainant directly charging " that the pretended insolvency of the said Willis and Robinson was without foundation, and that the said alleged assignment was made and executed with a view to defeat his judgment, and to delay and hinder him and other creditors, and to cover and protect the property of the said Willis and Robinson for their own benefit ; and for that purpose they obtained the assent of the other respondents, the assignees, and executed and delivered the said deed of assignment in *collusion and fraud.*"    All this being confessed by the demurrer, we certainly need not stop to settle the intricate and much litigated question as to what reservations and conditions in voluntary deeds of assignments by insolvents make them fraudulent and void against their creditors, but we may proceed directly to the single enquiry whether the complainant, on his own showing, has made out in the supplemental bill, sufficient to entitle him to relief in the court of chancery against the respondent Willis.

ALBANY,
Dec. 1832.

McElwain
v.
Willis.

The court of chancery will not give a specific lien to a creditor at large, farther than he possesses at law; for as he did not trust the debtor on the faith of such lien, but on his general credit, it would be unjust to give him a preference over all other creditors, and thereby defeat that equality of distribution which equity aims at wherever rules of law do not prevent. The mere fact, therefore, that the assignment was collusive and fraudulent, and made to defeat creditors, does not of itself entitle a single creditor to seek relief against it in chancery. Perhaps a bill filed in behalf of himself and all the other creditors might be sustained. 18 *Ves.* 82. 2 *Johns. Ch. R.* 296. But it is not necessary to express an opinion on this point, the present not being such a bill. It is only after a creditor has obtained an execution at law that he acquires a *legal preference* to the assistance of chancery, for none but execution creditors at law are entitled to that assistance. *McDermutt* v. *Strong,* 4 *Johns. Ch. R.* 691. It is when a creditor has obtained an advantage by his legal diligence, and has proceeded to judgment and execution without obtaining satisfaction of his debt, that he is permitted to ask the aid of a court of chancery. There seem to be two classes of cases of this description: one where the debtor has property on which the judgment or execution is a specific lien, but which lien, owing to the concealment or fraudulent transfer of the property, or to some other embarrassment wrongfully created, cannot be made operative so as to satisfy the debt; the other, where the property has been removed before a lien was obtained, or where it consists in choses of action, or interests not liable to be taken in execution. In the latter class there seems to be some doubt how far English chancery interferes to assist a judgment creditor; the existence of the bankrupt law in that country rendering such interference generally unnecessary. There are some early cases which show pretty distinctly the exercise of this power, although the case of *Edghill* v. *Haywood,* 3 *Atk.* 351, which has been often quoted in support of it, arose under particular circumstances, produced by the defendant's having been discharged under an insolvent act, and cannot be considered as establishing the principle; and the later cases in England are decidedly the other way. But in this state the prin-

ciple was established by Chancellor Kent, in *Spader* v. *Davis,* and *Brinckerhoof* v. *Brown,* and it was confirmed by this court after full discussion, in *Hadden* v. *Spader,* 20 *Johns. R.* 544. But it was also settled by these cases that the aid of chancery to enforce payment from property on which the creditor had not, or from the nature of the property could not have a specific lien, would not be afforded until after an execution had been returned unsatisfied. Whether the actual return of the execution had been required by the English courts seems somewhat doubtful. The case of *Manningham* v. *Bolingbroke,* cited in *Mitf. Eq. Pl.* 115, and in *Cooper,* 149, states, that though an execution be necessary, the return of it *nulla bona* need not be shewn ; and in *Edghill* v. *Haywood,* 3 *Atk.* 351, the bill seems to have been filed as soon as the execution was put into the sheriff's hands. But in *Brinckerhoff* v. *Brown,* 4 *Johns. Ch. R.* 671, the necessity of having the execution returned is definitively settled, Chancellor Kent observing, " that if an execution must be previously issued, before this court can take cognizance of the suit at law for the purpose of helping it, the good sense of the thing would require a return of the execution, showing what has been done under it." And in *Scriven* v. *Bostwick,* 2 *McCord's Ch. R.* 416, the same point is affirmed, with this remark, that " it cannot be known by anticipation that the effort to obtain the debt at law will be ineffectual." And in *Beck* v. *Burdett,* 1 *Paige's R.* 308, Chancellor Walworth says, " the right of the creditor to come here for relief depends upon the fact of his having *exhausted* his legal remedies without being able to obtain satisfaction of his judgment." These cases are cited to show that before the passing of the revised statutes, part 3, ch. 1, tit. 2, § 38, the rule had become a settled one, that to entitle a judgment creditor to the aid of chancery to enforce satisfaction of his debt from property on which he had no *specific lien,* it was necessary for him to show in his bill that an execution on his judgment had been *returned unsatisfied.* The provision of the statute, therefore, which requires that the execution " shall have been returned unsatisfied in whole or in part," to enable the party to file his bill, is only declaratory of an existing rule ; consequently, if the remedy given by the statute be cumulative, as

the complainant's counsel contends, he would still, if pursuing the remedy which the court possessed power to give anterior to the statute, and which he supposes it possesses the power of giving independently of the statute, be under the same necessity of showing his execution to have been returned *unsatisfied.* As this is not alleged, and as the fact is not so, I mean as respects the execution on the judgment set out in the supplemental bill, it follows that he has not brought his case within the class provided for by the statute, or with any class wherein a court of chancery has ever interposed to decree satisfaction to a judgment creditor out of property not in its nature liable to execution, or out of property in its nature liable, but on which his execution has not obtained a *specific lien.*

It is now necessary to inquire whether the complainant shows enough in his bill to bring his case within the other class of relief, which is given in aid of a judgment or execution at law which has acquired a lien on specific property of the debtor, but which lien cannot be made operative to the satisfaction of the debt, in consequence of some fraudulent or inequitable obstruction or embarrassment which is interposed. In cases of this description, the aid of chancery is not sought, strictly speaking, for a new process, or to enlarge the functions of the legal process, but to remove some extraneous impediment by which its functions are crippled or deranged. For this latter relief a party rightfully applies to the court of chancery, but in his application, he must show that the relief, if granted, will be effectual; that is, that it will enable him to pursue and obtain the satisfaction of his debt, by means of the *legal* rights and remedies to which he is already entitled. Of course it is not necessary in this case to show, by the return of an execution unsatisfied, that he has exhausted his remedy at law; for that execution may be the very instrument by which, when the court has removed the impediment to its operation, he will obtain the perfect satisfaction of his rights; and a judgment creditor may file a bill in respect to his lien on freehold estates without proceeding to execution, but not if his lien be on leasehold and other personal proper-

ty, for that exists only from the time the execution is lodged in the sheriff's hands. 1 *Atk. on Convey.* 513.

Before examining particularly what was necessary for the complainant to allege in his bill, and comparing it with the allegations which he has made, it may be well to settle the question as to the effect of the respondent's demurrer upon these allegations.

By a demurrer, a respondent admits the allegations of the bill, but he admits nothing more ; for a demurrer confesses matter of fact only, not matter of law. 1 *Ld. Rym.* 18. He does not admit inferences or deductions that do not follow *necessarily* from facts distinctly alleged, and whatever is necessary to entitle the plaintiff to relief, must be alleged positively and with precision. *Mitford's Eq. Pl.* 41. A party seeking the aid of a court of chancery must show distinctly and unambiguously all the facts necessary to entitle him to that aid. *Shephard* v. *Shephard,* 6 *Conn. R.* 37. In ordinary cases, where the complainant has a plain and adequate remedy at law, the court of chancery will not interfere ; for the jurisdiction it exercises in relation to legal demands is merely ancillary to that of the courts of law. It is in this character that it sustains a bill of discovery to aid the plaintiff in the prosecution of his suit, or the defendant in his defence, or to prevent the setting up of an inequitable defence as an outstanding term attendant upon the inheritance ; and upon the same principle, after a judgment which is a lien upon land, the court will aid the plaintiff by removing a fraudulent assignment which is a cloud upon the title, and prevents the plaintiff from enforcing the lien of his judgment, or to redeem a mortgage which prevents the sale of the property, as where the mortgagee is in possession, or the amount due on the mortgage not being ascertained, it prevents a fair sale upon the judgment. But in cases of this kind, the complainant must show distinctly in his bill that the land is within the jurisdiction of the court of law where his judgment has been obtained, and that it is a lien at law on the land. The like principle is applied to personal property ; and as a lien on that is not obtained by the judgment, the plaintiff must show that he has issued an execution into the county where the property is situated, and obtained a specific

lien thereon by the actual or constructictive levy of the sher-
iff. As in both these cases the aid of the court is sought to en-
force a legal lien, it is indispensable it should appear from the
bill that this legal lien exists. Therefore it follows that where,
in consequence of the lands having been conveyed by the
fraudulent grantee to a *bona fide* purchaser before the entry
of the judgment, the plaintiff has obtained by his judgment
no legal lien upon the land, he cannot obtain the aid of chan-
cery to enforce the satisfaction of his judgment out of the pro-
ceeds of the sale which are in the hands of the fraudulent
assignee; for having no specific lien on these proceeds, he
stands in no better right in regard to them than a creditor at
large.   It is the same in respect to personal property, upon
which the execution never was a lien, either because it was
not in existence at the time the execution issued, or was not
in the county to which the execution issued, or before the
issuing of the execution had been sold to a *bona fide* purcha-
ser, or from its nature, like choses in action, was not liable to
be seized and sold on an execution.   In cases of this descrip-
tion, the entry of the judgment or the issuing of the execution
gives to the plaintiff no legal lien upon the proceeds of the
property in the hands of the fraudulent assignee, which enti-
tles him to the preference which he seeks over the creditors
at large.   To obtain such a preference, he must go further
and exhaust his remedy at law by the sale of other property,
if there be any, or by proving that there is not any, by the
return of his execution unsatisfied.   Then he can avail him-
self of the relief that is now expressly provided by our stat-
ute. The cases in support of these views, in addition to those
before cited, are *Angel* v. *Draper*, 1 *Vernon*, 399; *Shirley*
v. *Watts*, 3 *Atk.* 200; *Wiggins* v. *Armstrong*, 2 *Johns. Ch.
R.* 144; *Edverston* v. *Lyde*, 1 *Paige's R.* 639; *McDermutt*
v. *Strong*, 4 *Johns. Ch. R.* 687; *Spader* v. *Davis*, 5 *Johns.
Ch. R.* 280.

   Upon examining both the supplemental and original bills in
this cause, there can be found in them no allegation which
distinctly states, nor none from which it can be legitimately
inferred that the complainant, by means of his judgment or
execution, has obtained a lien at law on any property. From

neither bill does it certainly appear that the defendants, Willis and Robinson, were ever in possession of property on which a lien at law could attach ; much less that such lien was actually obtained by the plaintiff. The original bill charges that Willis and Robinson, at the time of the assignment, were possessed of sufficient funds and credit to pay such debts as were then due and payable, and to carry on their trade and business as formerly ; but in what these funds and credits consisted, it does not specify, and the plaintiff expressly disclaims knowledge of what property was conveyed by the assignment, and also disclaims that there was any property upon which the execution mentioned in this bill could be levied. In the supplemental bill, the allegation is, that "the said judgment cannot be satisfied by a levy on any property accessible by the said sheriff, and that by means of the respondents, Allen, Baldwin and Yardley, pretended assignees as aforesaid, the said property has been in the first instance placed beyond the access of the sheriff," &c. On the argument, it was insisted for the plaintiff that this allegation sufficiently showed the existence of property on which the execution was a *lien ;* but it justifies no such conclusion. In the first place, the term *property,* as here used, though it may, does not necessarily imply leviable goods and chattels ; for all that appears, the property assigned may have consisted wholly of stocks, notes, debts, and other choses in action not liable to be taken in execution. In the next place, if the property were leviable in its nature, it does not appear that it was still remaining unsold in the hands of the assignees, or within the jurisdiction of the sheriff of New-York, when this execution came to his hands ; but the reverse. It is not sufficient that this fact is not absolutely inconsistent with the allegation ; it should appear explicitly and inevitably. And finally, it does not appear that the interposition of the court of chancery could give effect to the *legal* process of the plaintiff. The prayer of the bill shows that he asks the aid of that court, not to give operation to his judgment and execution, but merely because his judgment and execution are inoperative ; and in this view we have before seen that he has not complied with the prerequisites to enti-

tle him to such aid.    I am therefore for affirming the decree of the chancellor.

This being the unanimous opinion of the court, the decree of the chancellor was thereupon *affirmed.*