Reese, J.
delivered the opinion of the court.
Stephen Cantrell, being insolvent, Wendle, the brother of Mrs. Cantrel, conveyed to G~ M. D. Cantrell, a tract of land near Nashville, containing about seven acres, in trust for the separate use and-benefit of Mrs. Cantrell during her life, *374 with reversion after the death of Mrs. Cantrell to the grantor and- his heirs.
The trustee, G. M, D. Cantrell, was at the time of the conveyance, a member of a mercantile house, known by the style of Cantrell & Allen; and Mrs. Cantrell, the beneficiary in the deed of conve} anee, had funds, her separate property, in the hands of Cantrell and Allen, amounting to about the sum of $2500. With the funds, she desired a dwelling house and other improvements to be constructed, for her, upon the land conveyed to her by Wendle, her brother.
Her trustee and son, G. M. D. Cantrell, contracted for and superintended the construction of the dwelling house and other impiovemenls. He projected the improvements upon a scale which required for their completion, the expenditure of about the sum of $2500, in addition to the separate funds of the mother. This amount was furnished by him from, the funds of Cantrell & Allen. It appears from his answer and that of Mrs. Cantrell, that the latter did not wish, or expect, or request, that he should expend any thing out of his own funds, or those of the firm; but that she expected and was willing, that the improvements- should have been made by the exclusive application of her own separate means, and that neither he nor she knew or believed, during the time of the expenditure, that the house of Cantrell & Allen was in failing circumstances and verging towards bankruptcy. This, however, was the fact. .
The question is, whether, under these circumstances, this voluntary and unsolicited investment, by the son, in improvements upon the separate real estate of the mother, can be reached, in her hands, by the creditors of Cantrell & Allen.
There is no pretence, that there was, in the transaction, any trust,, secret or otherwise, between the mother and the son, — nor thatit was intended to hinder and delay the creditors of Cantrell & Allen in the collection of their debts. It has been agreed that the answers shall be considered as depositions, — and they leave no ground upon which to impute intentional fraud to the parties. It is not pretended, that the transaction creates the relation of creditor and debtor between the *375 s-on and mother. Upon a principle, which has become an axiom, no one can be made a debtor in that way.
But it is strenuously urged that Mrs. Cantrell, or her separate real estate, is liable to the creditors of Cantrell & Allen for the money so invested in improvements, — not because of any supposed lien created thereon, by the judgment and execution; but, because the advancement or gift by the son, he being an embarrassed man, is contrary to the principle and spirit of the statutes made for the prevention of frauds. Those statutes, indeed, make “void every gift, grant or conveyance of lands, tenements, hereditaments, goods or chattels, or of any rent, common or profit out of the same, whether by writing or otherwise, and every bond, suit, judgment or execution, made of fraud, malice, covin, or collusion to hinder, deceive, delay, &c.”
The principle of these statutes is, that the lands, goods, or chattels, so fraudulently given, or transfered, shall be liable, in the hands of the fraudulent donee or transferee, to the judgment and execution of the creditor of the fraudulent grantor. Thus, if an embarrassed debtor convey a tract of land to his son, not upon any trust, secret or otherwise, but for bis advancement, and that it may be absolutely his, — a creditor of the grantor can, by operation of those statutes, render the land liable to the satisfaction of his debt. But if, before this be done, the land be fairly and honestly conveyed to another, for an adequate consideration, so that it cannot be reached by the creditor of the first grantor, will it be contended, that the son shall be held liable, as a trustee, to such creditor, for the proceeds of the land?
If money be given by an embarrassed man, to his relation or his friend, not upon any secret trust, to be implied from the circumstances, or otherwise — but absolutely, and for the benefit of the donee, — it would be difficult to say, that the donee, by the transaction, and by operation of the statute, becomes debtor to the creditor of the donor. Lord- Northington, indeed, in the case of Partridge v. Gopp, Ambler, 596, argues in behalf of such a consequence, although he does not so decide. The case was one in which an executor had given away the trust fund to his children, and that circumstance, if they had not *376 been legatees, under the will, (upon which ground they Were held not to be liable,) might, perhaps, have justified the court in affecting them with a trust. But the intimation of Lord Northington, in that case, is not consistent with the case of Dundas v Dutens, 1 Ves. Jr. 196; Calander v. Estwick, 1 Ans. 381, and McCarthy v. Goold, 1 Ball & Beat. 387; see, also, 9 Ves. 189; 10 Ves. 368, and the case of Erwin v. Oldham, in this court, 6 Yer. 185.
The principle of these cases is, that the jurisdiction of courts of chancery, in cases arising under the statute, is ancillary to that of the common law courts, and for the purpose of giving effect to the lien of the creditors, judgment and fieri facias.
In consequence of the decision of this court, justrefered to,* the act of 1832, c. 11, was passed to subject stock, choses in action, &c., to the satisfaction of the claims of creditors. If the positions, by which the decree of the Chancellor, made in the present case, is attempted to be sustained be correct, that case was improperly decided, and the act of assembly produced by the decision, was unnecessary. For they both proceeded upon the ground, that where the execution created no lien, the ancillary jurisdiction of chancery could not be successfully invoked.
It would follow, from the view which we have taken, that if Cantrell the son, had, without any trust, secret or otherwise, proved or to be implied, given to his mother the money in question, to be hers absolutely, she could not be treated, as personally the debtor of the son’s creditors. If this be so, when the son, without any secret trust or intentional fraud, mingles his funds with hers, and invests them in improvements upon her real estate, it follows, a fortiori, we think, that the creditors cannot treat her, or her land, as being liable to them. Upon what principle shall this be done? Their judgment ere. ates no lien upon her separate real estate, nor their fi. fa., upon the funds invested; nor is she debtor to her son.
It is said, however, that if Mrs. Cantrell, or her separate property cannot be rendered liable for the amount of the funds *377 of her son, which have been invested, it will follow, that an embarrassed man, with large money resources might build a valuable factory upon a piece of land, the property of a friend, of inconsiderable value, and bid defiance to his creditors; or, that a fraudulent father might incorporate a jewel, worth many thousand dollars, with the watch of his daughter, and elude the payment of his debts.
The cases put are of a character to make the friend and daughter participators in actual fraud. The very circumstances would incontestably prove the existence of a trust, — and we imagine they would be treated accordingly. But what would be the practical operation of the principle contended for in a variety of cases? What its operation, in a case very common in this country? A father, possessed of a large real estate, settles upon it several of his sons, intending, perhaps, if they properly conduct themselves, that it shall be theirs. They build handsome houses and make valuable improvements, and become insolvent, — what shall the creditors sell to satisfy their debts? The houses only, or land also? And if land, how much, and how shall it be laid off? And for what shall the father, the owner of the land, be held liable in the account between him and the creditors of the sons? For ameliorations only, or for the actual amount of investments and the costs of the improvements?
The same difficulty would arise between the creditors of a dowress and the heir; between those of the lessee and the landlord. In the case before us, what would the creditors sell? The house, or the house and the land also? Why the land? because it is but seven acres! Ought it not, on the same grounds, to be sold if it consisted of seven hundred acres? And how should the reversioner, Wendle, be treated? Shall his interest, too, be disposed of?
Whether, therefore, we consider this case, in one aspect or . the other; as it regards the rights of the complainant and the jurisdiction of the court, or the impossibility of giving any relief which would not operate with gross injustice upon the title and property of Mrs. Cantrell; we are alike satisfied that the decree should be reversed and the bill be dismissed.
Note. The case of Erwin v. Oldham, was argued in March, 1832, and continued under advisement, and for re-argument, till March, 1834, when the chan-, cellor’s decree was affirmed. It is reported as of March Term, 1834, when the opinion was delivered; but the decision of the Chancery Court, and the opinion intimated by the Supreme Court, on the argument, produced the act of 1832, which was passed on the 18th of October. See Minutes of the Court, March» 1832, p. 246, and March, 1834, p. 96.
In the case of Donovan v. Finn, 1 Hopkins 59» the chancellor said, “The cases, of authority, in which relief has been given to judgment creditors, were, in themselves, cases of equitable jurisdiction, involving fraud or trust, or seeking to subject to the satisfaction of the judgment, property in itself, liable to execution, by removing a conveyance, which operated as a fraudulent impediment to the execution.” This doctrine, it is probable, produced the New-York statute of 1828, R. S. 173, 174, §38, 39, from which our aot of 1832 is almost a literal copy. See McFlwain v. Willis, 9 Wendell, 548.

 See Note at the end of the case.