## SUPERIOR COURT.

BISHOP agt. R. HALSEY, U. H. BELDEN, C. BELDEN, W. HARBECK and J. H. HARBECK.

BISHOP & STEWART agt. THE SAME DEFENDANTS and CHARLES B. HUNTINGTON.

An assignment by a debtor of all his property, in trust, to pay two creditors, and which is silent as to the fact whether there are, or are not other creditors, and which makes no provision as to the surplus, is not void on its face, irrespective of extrinsic facts, and of the actual intent with which it is made.

A creditor at large of a fraudulent assignor cannot maintain an action to set aside a fraudulent assignment, nor can a mere voluntary assignee of such fraudulent assignor.

A creditor, who has recovered a judgment and issued execution, may, so far as it is an assignment of real and leviable personal property. After execution actually returned, he may also institute a suit to reach the *choses* in action of the debtor.

In an action, by a judgment and execution creditor, to set aside such an assignment as is first above named, it is not a matter of course to enjoin the assignee from proceeding at all, and to appoint a receiver, when the motion is met by a full denial of actual fraud, and of the material facts alleged as evi-

dence of it, and it is expressly avowed that the whole assigned property is insufficient to pay the debts for which it provides, and especially when the insufficiency of the property for that purpose is not controverted.

But the court will make such orders as, in view of all the facts and circumstances, may seem to be just, to secure to the parties such relief as the court may ultimately decide them to be entitled to.

*Special Term, Nov.* 1856.

THE suit by Bishop, as sole plaintiff, is brought to set aside an assignment made by Huntington on the 10th of October, 1856, to Halsey, of all his property. The assignment merely provides for paying his debts to the Beldens and Harbecks, and his liabilities to them. It neither states the amount of them, nor the value of his property, nor whether he has other creditors, nor provides what shall be done with the surplus, if there be any.

Bishop's only right to sue is derived from a voluntary assignment made to him by Huntington of all his property, on the 18th of October, 1856. The object of the first suit is to set aside the first assignment as fraudulent, and to distribute the property under the second one, which is for the equal benefit of all the creditors.

A temporary injunction, restraining Halsey from disposing of the property, was granted, and, pending the motion to have it continued until the hearing, Huntington confessed a judgment to Bishop and Stewart, on the 30th of October, for over $27,000. Execution was issued the same day, and returned unsatisfied on the next day, and an *alias* was then issued. The second action was then brought by Bishop and Stewart, as judgment and execution creditors of Huntington, against the same defendants as on the first one, and Huntington was also made a defendant.

The object of the second action is to set aside the first assignment, and have the property applied to pay the judgment in favor of Bishop and Stewart. Both complaints state that there were other creditors, to a large amount, who are not provided for in the assignment made to Halsey, and allege that it was made with intent to defraud; and also insist that it is void,

because it is an assignment of all the debtor's property, with a provision for *paying two* only, and has no provision for paying any other creditor, and has a resulting trust of the surplus for the use of the assignor. It also states that Huntington was insolvent.

The answers deny all actual intent to defraud, and all the intrinsic facts stated as evidence of it, except that there were other creditors, and that Huntington was insolvent, and avers that the property assigned to Halsey is wholly insufficient to pay those secured by it. In each case a motion has been made for an injunction restraining Halsey from interfering with or disposing of the property. A receiver is prayed for. These, and the facts stated in the opinion, are all that are necessary to understand the grounds of the decision made.

THERASSON & BRYAN and JAS. T. BRADY, *for plaintiffs.*
TRACY, POWERS & TALLMADGE and WM. CURTIS NOYES, *for defendants.*

BOSWORTH, Justice. What is the nature and legal effect of the instrument, or assignment, of the 10th of October, 1856? It, in terms, " assigns, conveys, transfers and sets over to Halsey, his heirs, executors, administrators and assigns," all and singular the real and personal estate of which Huntington may be seized, possessed of, or entitled to, either at law or in equity, in possession, reversion or remainder. It is, therefore, an absolute grant or conveyance of all the property of the assignor.

The assignment does not, *by its* terms, declare that it is made in trust. Its language is, that the assignee, Halsey, is to enter into and upon the assigned property, to take possession, convert into money, and to get in said personal estate, and to sell and convey said real estate; and out of the proceeds " pay, satisfy and discharge all liability, indebtedness or obligations, of any name, nature and description, that the said Huntington may be, or may become under or subject to, or in favor of Charles Belden, Charles Belden & Co., William Harbeck, John H. Harbeck, or Harbeck & Co., all or either of them, in

manner and form following: that is to say, Charles Belden and Charles Belden & Co. are to receive jointly one-half of said proceeds, and William Harbeck, John H. Harbeck and Harbeck & Co. are jointly to receive one-half of said proceeds—the said parties being thus paid half and half."

No provision is made for other creditors, and the assignment does not disclose or intimate that there are other creditors, and it is silent as to any surplus. The defendants aver, by their answers, that all the estate of Huntington, of which they have any knowledge, or which they have been able to discover, is insufficient to discharge the liabilities intended to be satisfied through the assignment.

The assignment, as I construe it, provides for applying the proceeds of all the property of Huntington, to pay and discharge his debts and liabilities to the Beldens and the Harbecks. It avows a purpose to pay them half and half—or, in other words, as much of the debts owing to the one as to the others. Assuming, for the purpose of the present motion, that the whole proceeds are insufficient to pay them in full, and that the assignment was made without any actual intent to defraud, can it be said to be void by reason of any matters appearing on its face, for the reason that it contravenes any statute of the state, or any principle of common law?

A debtor, not having property enough to pay all his creditors, may, at fair prices, sell and transfer to particular creditors, to the exclusion of others, enough to satisfy the debts owing to those to whom the transfers are made. He may so sell and apply until his whole property is exhausted. He may mortgage all his estates to particular creditors, and thus prefer the mortgagees. (*Leitch* agt. *Hollister*, 2 *Coms.* 211.)

May he transfer it to a third person, to convert and apply it to pay particular creditors, the whole property being insufficient to pay them?

Express trusts may be created to sell lands for the benefit of creditors. (1 *R. S.* 278, § 55, *sub.* 1.) It would seem to be idle to make a provision, in terms, for the benefit of creditors to whose benefit there could be no property to be applied. I

think this statute authorizes trusts for the benefit of only a part of a debtor's creditors, when all the property is assigned in trust for their benefit, and is insufficient to pay them, if there is no other objection to the trust conveyance than the mere fact that it does not, in terms, provide for creditors who could, in no contingency, be benefited by it, because there was nothing for them to take under it.

If such trusts may be created to sell lands for the benefit of creditors, is there any rule of law prohibiting such trusts to convert and apply personal property for the benefit of creditors?

This assignment differs, in one important feature, from those adjudicated upon in *Mackie* agt. *Cairns*, (5 *Cow.* 547,) and *Goodrich* agt. *Downs*, (6 *Hill*, 438,) and *Barney* agt. *Griffin*, (4 *Com.* 367.)

In each of the cases cited, the assignment contained, in *express terms*, a provision for the benefit of the assignor, by directing a specific appropriation of, or payment to him, of part of the proceeds of the property assigned, before all his creditors were paid in full. That provision was held to be sufficient to avoid the assignment *in toto*, although there was no actual intent to defraud. It was held to be a violation of the statute which inhibits all transfer of personal property in trust for the use of the party making the same. (2 *R. S.* 135, § 2.)

The assignments to third persons in trust to pay certain creditors, and the surplus to the assignor, were held to be a violation of that statute, although in point of fact, the property was insufficient to pay the preferred creditors, and it was alleged, and offered to be proved, that at the time they were drawn it was not contemplated that a surplus would arise.

The court said, that the parties, after having by the terms of the assignment provided for a surplus, and the disposition to be made of it, could not be permitted to allege that none did or could arise, or that the existence of any was not contemplated as an actual possibility.

That in such a case the transaction must be determined by the terms of the trust deed. And inasmuch as by its terms it conveyed, in trust, all the property of the debtor, and directed,

as one of its declared trusts, that part of the proceeds should be paid to the debtor himself, before his creditors were paid in full, it contained an express trust for the use of the person creating it, and was therefore wholly void, irrespective of the question of actual intent.

The assignment in question does not, in terms, create any such trust. It is not, therefore, within the prohibition of 2 R. S. 735, § 2. To render an assignment void, as against creditors of the assignor not provided for in it, it must have been made with intent to defraud creditors, or it must contain provisions which will avoid it, although an actual honest intent be conceded, or, if denied, is proved.

So far as actual intent to defraud is involved in this motion, it is denied, as are all the extrinsic facts which are alleged as evidence of it. For all the purposes of this motion, it must be taken to be true, that all of Huntington's property is insufficient to satisfy his just liabilities to the Beldens and the Harbecks.

The question which this motion presents, on this view of the facts, is simply this : A debtor, unable to pay his debts, and his whole property being insufficient to pay two of his creditors, assigns it to a third person in trust to pay those two creditors. He so assigns it, in good faith, and without any intent to defraud any creditor. Is such an assignment void merely because it does not contain a nugatory provision to apply the surplus, if any there be, to pay his other creditors, as far as it may be sufficient, when it was impossible that a surplus could exist to be divided between them? I know of no authority which so holds, and cannot believe that the rights of parties, in the absence of any statute touching the question, can be affected by such a formality.

If this view be correct, then it follows, that whether the assignment be fraudulent or not depends upon the intent with which it was made. All fraudulent intent being denied by the answers, and the assignment not being necessarily void upon its face, the equities of the plaintiff are fully denied by the answer, and the motion should not be granted, as a matter of course.

In this connection it may also be remarked, that it does not appear, by the face of the assignment, nor can it be conjectured from the face of it alone, that Huntington had other creditors than those for whom it provides. A man may assign all his property to pay all his creditors.

In order to assail the assignment, therefore, or to suggest a ground for impeaching it, it becomes necessary to allege *extrinsic facts*, as that there were creditors for whom it does not provide. Such, and other extrinsic facts are, or may be, evidence of a fraudulent intent. These may be repelled, by showing that all the property assigned is insufficient to pay the creditors provided for, and that such was, in fact, the estimate which the parties put upon it when the assignment was made. This fact would seem to repel all presumption of an actual intent to defraud, because it would establish that no creditor was or could be defrauded.

It must be obvious, as I think, that this assignment, if void, is so because it was made with an actual *intent* to defraud, which those assailing it must establish, and that it cannot be held void solely by reason of matters appearing on its face.

Even if the assignment was void on its face, as against creditors, or voidable at their suit, it would be a sufficient answer to the motion, in which Bishop is sole plaintiff, to say that it is valid as between the parties to it. That neither a creditor at large, nor any mere assignee appointed by Huntington, without the order or intervention of a court, is in a condition to assail it. It cannot be assailed as an assignment of realty and of leviable personal property, except by a creditor who has recovered a judgment, and had an execution issued to the sheriff thereon. And to reach choses in action the execution must have been returned, *nulla bona*, before such an action can be commenced. (*M'Elwain* agt. *Willies*, 9 *Wend.* 548; *Spader* agt. *Hadden*, 20 *J. R.* 554; *North American Fire Insurance Co.* agt. *Graham*, 5 *Sand.* 197.)

With respect to the action brought by Bishop and Stewart, if they have a valid judgment, and an execution which has been issued upon it, duly returned, so as to give them a standing *in*

court, I see no difficulty in the way of a judgment being rendered in it, declaring the assignment to Halsey void, either for actual fraud, or for matters appearing on its face, if the latter shall ultimately be deemed sufficient to avoid it.

There certainly is no obstacle to their recovering such a judgment, unless they are precluded from being plaintiffs in an action to avoid the assignment to Halsey, by the mere fact that Bishop holds a general assignment, which he is seeking to uphold as valid, and which embraces all the property of Huntington. The judgment is in no way connected with the assignment to Bishop. It is not upon the same trusts as the latter assignment, and was not confessed to aid it, or to be used if that should be held fraudulent.

Nor do I see any impropriety or incongruity in the Beldens and the Harbecks setting up the second assignment, and its acceptance by Bishop, and insisting that if, contrary to their own opinions of their legal rights, the court shall hold the first assignment void, that then the court should declare the second assignment valid, and direct the debtor's property to be distributed under it.

In all cases in which an answer is interposed, the court may grant any relief consistent with the case made by the complaint, and embraced within the issue. (*Code*, § 275.)

It would be inconsistent with the case made by the latter complaint to declare the first assignment void. It would be consistent with the case made by the complaint, and embraced within an issue upon facts properly stated in the answer, which may result in proving the due execution and acceptance of the second assignment, to adjudge that the debtor's property passed by and should be distributed under the latter assignment, unless all right to any such relief must be overridden by the stern abstract principle that the first assignment is valid and not fraudulent, as against the second assignment, and is valid except as against legal process at the suit of a creditor having a judgment against the debtor, and an execution issued thereon.

But whether this be so or not, the first assignment, if fraudulent, may be set aside at the instance of judgment and execu-

tion creditors of the assignor. I do not deem it important, in order to dispose of this motion, to consider whether the judgment confessed to the plaintiffs would be set aside on motion, as not conforming to the requirements of the Code.

I think the motion in the first suit should be denied, on the ground that the plaintiff is not in a position to question the legality of the first assignment.

In the second suit it should be denied on the following grounds, some of which would be equally applicable to the first suit, if brought by a party having a legal standing in court, which would enable him to question its validity :—

1. The assignment to Halsey is not void solely by reason of anything appearing on its face, and irrespective of extrinsic facts.

2. All the extrinsic facts alleged, as evidence of an actual fraudulent intent, are fully met by the answers of the defendants.

3. There is nothing alleged against the integrity or capacity of the assignee, and there is not the slightest ground for doubting his responsibility.

But while the assignee should not be restrained from converting the property into money, it may be just to prohibit him from distributing it, until after judgment in these actions, unless security be given to account for the property, and apply its proceeds or value as the court may hereafter direct.

Although the defendants state, in their answer, that the assigned property is insufficient to satisfy the liabilities which it was assigned to pay, yet they do not state the facts out of which they arose, so that the court can see that the claims are valid; nor is their amount named. There may, therefore, possibly be a surplus. If so, it would go to the second assignee, assuming both the assignments to be valid.

The plaintiffs may establish the invalidity of the first assignment, notwithstanding the denial on this motion of the truth of the matters alleged to show actual fraud.

The case presents many questions that are novel. The first assignee, in point of time, is a clerk of his co-defendants. But though competent and responsible, yet the fact of his being

thus situated, in connection with the other features peculiar to the case, seems, in my judgment, to make it proper to grant an order denying the motions, so far as they seek to restrain the assignee from converting the estate into money; but providing that it shall not be disposed of until the further order of the court, unless a bond be given by him and his co-defendants, (excluding Huntington,) in a penalty of $50,000, conditioned to pay to each plaintiff such sum as he shall ultimately recover, and to account for the property, and apply its value or proceeds, and pay them to such person or persons, and in such sum or sums as the court, by order or judgment in either or both actions, shall ultimately direct.

On such a bond being given, with two sureties approved by a justice of this court, each of whom shall justify in $30,000, the motions in each case will be denied, and the temporary injunctions heretofore granted will be discharged.