1843.

Brownell
v.
Curtis.

---

BROWNELL *vs.* CURTIS and others.

Where the complainant filed a creditor's bill against his judgment debtor, and made the copartner of such judgment debtor, and a third person who was a debtor to the firm, parties defendants, to reach the interest of the judgment debtor in the copartnership effects, and alleging that the debtor of the firm had been released from his debt without payment, for the purpose of defrauding the complainant ; and the debtor of the firm pleaded in bar to all the discovery as to his indebtedness, &c. that before the filing of the bill, the firm being insolvent, the copartners assigned all the copartnership property and effects to him and another person, as trustees for the benefit of the creditors, and such debtor also put in an answer in bar to the whole relief sought by the bill ; *Held*, that the discovery being proper, if the complainant was entitled to relief upon the case made by the bill, the plea and answer could not stand together, and that such answer overruled the plea.

And the copartner of the judgment debtor having pleaded in bar to the whole discovery and relief sought by the bill, that the firm was insolvent, and that after the alleged discharge of the debt due to the copartnership and before the filing of the complainant's bill, the copartners assigned all the copartnership property and effects to the alledged debtor of the firm and another person, for the benefit of the copartnership creditors, and that the assigned property was insufficient to pay such creditors ; *Held*, that the vol-

untary assignment by the copartners did not transfer to the voluntary assignee the right to recover the debt which had been fraudulently released by the assignors; and that the plea was bad, as it did not show that the co-partnership would have been insolvent if this debt had not been fraudulently released, nor show that this defendant had paid the amount which as between him and his copartner, the judgment debtor of the complainant, he had agreed to pay for the goods put into the firm by such judgment debtor, as stated in the complainant's bill.

Upon a bill for discovery and relief, the defendant may answer and make the discovery sought by the bill, and may demur as to the relief only.

And in cases where the complainant is entitled to the relief sought by the bill, but where he has not the right to a discovery from the defendant of the facts upon which the claim for relief depends, because the discovery may criminate the defendant, or subject him to a forfeiture, or will be a breach of confidence which some principle of public policy does not permit, the defendant may answer as to the relief and demur as to the discovery sought by the complainant.

But where the same principle, upon which the demurrer to the discovery of the truth of the allegations contained in the complainant's bill is attempted to be sustained, is equally applicable as a defence to the relief sought by the bill, the defendant cannot demur to the discovery, only, and answer as to the relief.

Nor can a defendant plead any matter in bar of the discovery only sought by the complainant's bill, where the matters thus pleaded would be equally available as a defence to the relief also.

Where the defendant's plea, or demurrer, as to any part of the discovery sought by the complainant's bill, is accompanied by an answer, and the complainant excepts to such answer before the plea or demurrer has been argued and disallowed, he admits such plea and demurrer to be good; and if he afterwards attempts to set down the plea or demurrer for argument, the defendant may apply to strike the cause from the calendar.

But as the exceptions to the answer are not before the court upon the argument of the plea, or demurrer, that is not the proper time to raise the objection that the complainant has admitted the validity of the plea, or demurrer, by filing exceptions to the answer which accompanied the same.

As a general rule no one, by his mere voluntary assignment, can transfer to his voluntary assignee a right of action which he does not himself possess. And where an insolvent makes a fraudulent transfer of his property to defraud his creditors, or voluntarily releases his debtor from liability with the same fraudulent intent, so as to deprive himself of the right to reclaim the property sold, or to recover the debt released, he cannot by a merely voluntary assignment of his property and effects to a trustee, for the benefit of his creditors generally, or of certain preferred creditors, give such voluntary trustee the right to reclaim the property sold, or to recover the debt so released.

Nor will such voluntary assignment deprive a creditor who has exhausted his remedy at law against the fraudulent debtor of the right to file a creditor's bill to reach the property in the hands of the fraudulent vendee, or to recover the debt which has been thus fraudulently released.

Where the testator or intestate, in his life time, has made a fraudulent transfer of his property to defraud his creditors, and afterwards dies insolvent, his

executors or administrators may, under the provisions of the revised stat-utes, recover the property from the fraudulent grantee, for the benefit of the creditors of the decedent.

THIS was an appeal from a decretal order of the vice chancellor of the seventh circuit, allowing the pleas of the several defendants to the complainant's bill. The complainant was a judgment creditor of Curtis,. one of the defendants, as to whom this was an ordinary creditor's suit to reach his choses in action and other property and equitable interests. Another object of the bill, however, was to reach his interest in the property and effects of a copartnership which had existed between him and the defendant J. Marsh. And the complainant among other things alleged that the copartners, for the purpose of defrauding their creditors, built a dock and made other improvements upon a lot, the legal title to which was in the defendant E. C. Marsh; that Curtis and J. Marsh failed in November 1837, at which time the defendant E. C. Marsh owed them about $5000, which debt was cancelled and discharged without actual payment, for the purpose of defrauding the complainant ; and that at the time of cancelling that debt various pretended and unfounded claims were brought forward and allowed as offsets against such debt. The defendant E. C. Marsh answered the bill, except as to so much thereof as sought a discovery of the interest of the other two defendants in the lot upon which the dock and other improvements had been made by them, his indebtedness to them at the time of their failure, and the alleged fraudulent cancelling and discharging of that indebtedness. And, as to that part of the discovery, he pleaded in bar, that the debt due from him to Curtis & Marsh at the time of their failure, was due to them as copartners and not otherwise ; that on the 21st of November, 1837, and ever afterwards, the firm was insolvent ; and that on the 30th of December in the same year, and before the filing of the complainant's bill, Curtis & Marsh assigned all their copartnership property and effects to himself and D. Wright, as trustees, for the benefit of the creditors of the firm. To the answer accompanying

this plea the complainant excepted for insufficiency and impertinence.

To the whole discovery and relief sought by the bill the defendant Curtis pleaded that in January 1838, and for a long time previous thereto and ever since, he was and had been insolvent; and being so insolvent on the 5th of January, 1838, at the instance and request of the complainant, he assigned all his property, of every description, to J. W. Burnham in trust for his creditors; and that the whole assigned property was insufficient to pay the debts for which it was assigned. He also pleaded in bar to the whole bill, that the firm of Curtis & Marsh, on the 30th of December, 1837, and for a long time previous to that date, was insolvent, and had ever since been so insolvent; and that on that day they assigned all the copartnership property and effects to E. C. Marsh and D. Wright, in trust for their creditors, and that the assigned property was insufficient to pay the debts of the firm.

And the defendant J. Marsh pleaded in bar to the whole discovery and relief sought by the bill, the same matters which were stated in the last plea of Curtis.

*M. T. Reynolds*, for the appellant.

*D. Wright*, for the respondents.

THE CHANCELLOR. The pleas of the several defendants are not only several, but depend for their validity upon distinct considerations. It is necessary, therefore, to consider each plea separately.

The defendant E. C. Marsh puts in an answer in bar to the whole relief sought against him, by the bill, and by his plea seeks to avoid the discovery of the facts upon which the complainant's right to relief depends. It appears to be settled that, upon a bill for discovery and relief, the defendant may answer and make the discovery sought and demur to the relief only. (*Hodgkin* v. *Longden*, 8 *Ves*. 3. *Todd* v. *Gee*, 17 *Idem*, 273. *Welf. Eq. Pl.* 133.) And

there is also a class of cases in which the defendant may refuse to make a discovery as to particular charges contained in the bill, although a demurrer could not have been sustained as to the relief which the complainant intends to found upon those charges. Those, however, are cases in which the discovery asked for would tend to criminate the defendant, or subject him to a penalty or forfeiture, or would be a breach of confidence which some principle of public policy does not permit ; and where the complainant may be entitled to the relief sought, upon the matters charged in the bill, although the defendant is not bound to make a discovery to aid in establishing the facts. (*Attorney General* v. *Brown*, 1 *Swanst. Rep.* 294. *Dummer* v. *The Corporation of Chippingham*, 14 *Ves. Rep.* 225. *Hare on Disc.* 5.) But where the same principle upon which the demurrer to the discovery of the truth of certain charges in the complainant's bill is attempted to be sustained, is equally applicable as a defence to the relief sought by the bill, the settled rule of the court is that the defendant cannot be permitted to demur as to the discovery only, and answer as to the relief. (*Morgan* v. *Harris*, 2 *Bro. C. C.* 124. *Waring* v. *Mackreth*, *For. Exc. Rep.* 124. *Story's Pl.* 254, *n.* 1. *Welf. Eq. Pl.* 133.) This general rule is equally applicable to the case of a plea ; and the defendant cannot plead any matters in bar of the discovery merely, when the matters thus pleaded would be equally valid as a defence to the relief. The vice chancellor therefore erred in allowing this plea of E. C. Marsh to the discovery only ; and the order appealed from must be reversed in that respect.

It appears, however, in this case, that before the argument of the plea the complainant had filed exceptions to the answer for insufficiency. The defendant therefore might have moved to strike the case from the calendar, when this plea was set down for argument, on the ground that the filing of exceptions admitted the goodness of the plea. The rule is thus laid down by Lord Redesdale, in his very valuable treatise on Equity Pleading : " Where

a defendant pleads or demurs to any part of the discovery sought by the bill, and answers likewise, if the complainant takes exceptions to the answer, before the plea or demurrer has been argued and disallowed, he admits the plea or demurrer to be good ; for unless he admits it to be good it is impossible to determine whether the answer is sufficient or not." (*Mitf. Pl.* 317.) In the case of *Boyd* v. *Mills*, (13 *Ves.* 85,) where the demurrer was set down for argument after exceptions had been filed to the answer, the application was to strike it from the calendar ; and the court gave the complainant leave to withdraw the exceptions, on payment of the costs of the motion, and to again except if the demurrer was allowed. And in the case of *Darnell* v. *Reyney*, (1 *Vern. Rep.* 344,) where exceptions were filed to the answer before the argument of the plea, it appears by Mr. Raithby's note that the proceedings upon the exceptions were stayed until the argument of the plea. It is evident, therefore, that this is a question which cannot arise upon the hearing of the plea or demurrer ; as the exceptions are not properly before the court upon such a hearing.

It does not appear in this case which party put the cause upon the calendar and noticed it for hearing before the vice chancellor. If it was done by the complainant it would of course be deemed a waiver of the exceptions previously filed. And if by the defendant, he must be considered as having treated the exceptions as a nullity. In this stage of the proceedings, therefore, the court must treat the exceptions as abandoned by both parties. And the proper course now is to make the same order and decree as if the complainant's solicitor had not made the mistake of filing exceptions to the answer before the argument of the plea.

The plea of the defendant, E. C. Marsh, is therefore overruled with costs of the hearing in the court below. But under the circumstances I shall not charge this defendant with the costs on the appeal. If the complainant wishes to obtain a further answer as to the matters covered by the plea, or as to any other matter not already sufficient-

ly answered, he must file his exceptions within thirty days; and the defendant must pay the costs of the argument of his plea, and answer the exceptions within thirty days thereafter, unless further time for that purpose is given by the vice chancellor.

The first plea of the defendant Curtis was clearly insufficient, as a plea to the whole discovery and relief sought by the bill against him, and ought not to have been allowed. If he is right in supposing that a debt fraudulently cancelled between the debtor and his creditors, and which such creditors could not have collected themselves after such discharge of their debtor, would pass by a voluntary assignment for the benefit of their creditors, so as to give the assignees a right which the assignors could not have enforced, the plea does not show that such assignees are necessary parties to this suit. But it shows that those assignees alone, or some one claiming as a creditor of the copartnership under that assignment, are the only proper persons to litigate the question as to the claims of the copartnership upon the defendant, E. C. March. For it is averred in the plea that the copartnership was insolvent at the time of the assignment, and has continued so ever since. This part of the plea is no answer to that part of the bill which seeks for a discovery and satisfaction of the complainant's debt out of the individual property of Curtis, the judgment debtor. This objection, to the first plea, is attempted to be obviated by the statement of the additional fact, that Curtis was himself insolvent, in January, 1838, when he made an assignment of all his individual property to a trustee to pay his creditors. That averment does not cover the charge, which is distinctly made in the bill, that this defendant has equitable interests, things in action, or other property of the value of $100, exclusive of all prior just claims thereon.

It is true this defendant avers in his plea that he continued to be insolvent from the time of making the last assignment to the time of putting in that plea. But that is no denial of the charge that at the time of filing the bill in this suit, in June, 1839, he had property of the value of

$100 and more, exclusive of all prior liens thereon. The assignment only transferred the property that the defendant had when that assignment was made, not that which may have been acquired since. And an averment that the defendant is insolvent is not equivalent to a denial that he has any property. For he is insolvent if he has only property enough to pay ninety-nine cents in the dollar of his debts. He may therefore have property to the amount of thousands of dollars, which ought to be applied to the payment of his honest creditors, and still be insolvent.

The second plea of this defendant, although pleaded in bar to the whole discovery and relief, in fact only applies to so much of the bill as seeks to obtain a satisfaction of the complainant's judgment out of this defendant's interest in the copartnership business ; and is therefore, defective in substance. For that reason it is unnecessary to inquire whether the defendant was authorized to plead two distinct pleas in bar of the whole discovery and relief sought by the bill. The decretal order of the vice chancellor must be reversed, with costs, as to the pleas of the defendant Curtis ; and those pleas must be overruled with costs. And Curtis must pay the costs, and answer the bill within the thirty days, unless the vice chancellor shall see fit to allow further time for that purpose, upon a proper application to him.

Upon the argument of this appeal, I supposed that the only question which could arise upon the plea of the defendant, J. Marsh, was whether a voluntary assignment, by creditors, of all their property and effects, for the payment of their debts, was sufficient to transfer to the assignee the right to revive and collect a debt once due to the assignors, but which they had cancelled and discharged previous to the assignment, by collusion with their debtor, and with an intention of defrauding their creditors. For the averment in the plea of this defendant that Curtis and Marsh were insolvent at the time of their assignment in December, 1837, is not sufficient to show that the individual creditors

of Curtis had no interest in the question as to the fraudulent discharge of the $5000 debt of E. C. Marsh on the 21st of the November previous. The cancelling of that debt may itself have rendered the firm insolvent; so as to deprive this complainant of the means of obtaining satisfaction of his judgment out of the surplus of the partnership effects.

In the case of *Bayard* v. *Hoffman*, (4 *John. Ch. Rep.* 450,) Chancellor Kent appears to have sustained a suit by the voluntary assignees of an insolvent debtor to reach property which had been previously disposed of by the assignees in fraud of the rights of his creditors. It is evident, however, from the report of the case, that the question was not fully considered by him. And the counsel who argued the cause for the complainants placed their right to recover in that case upon the ground that they were bona fide purchasers of the stock, without notice of the previous sale without consideration. It is not improbable therefore that my learned predecessor overlooked the distinction which exists between a voluntary assignment, by the fraudulent grantor himself, and an assignment by operation of law under the bankrupt acts. In the case of *Osborne* v. *Moss*, (7 *John. Rep.* 161,) the supreme court of this state decided that where the intestate in his lifetime had made a voluntary transfer of his property to defraud his creditors, his administrator could not impeach the validity of such transfer, although such administrator was himself one of the creditors; but that the remedy of the creditors of the decedent was by a suit against the fraudulent grantee, as an executor de son tort. A similar decision was made by the court of appeals, in Maryland, in the case of *Dorsey* v. *Smithson*, (6 *Har. & John. Rep.* 61.) The revised statutes of this state, however, have taken away the remedy which the creditor previously had against the fraudulent grantee, to charge him as executor in his own wrong, and have tranferred it to the rightful executor or administrator of the decedent, as the trustee for the creditors. (2 *R. S.* 449, § 17.)

1843.

Brownell
v.
Curtis.

It is a general rule of law, that a person cannot, by any voluntary act of his own, transfer to another a right which he does not himself possess. And where an insolvent debtor has made a fraudulent transfer of his property, or has discharged his own debtor from liability for the purpose of defrauding his creditors, so that he cannot reclaim the property, or sustain a suit for the debt in his own name, I think he cannot, by an assignment which is wholly voluntary on his part, take away the right of his creditors generally, to set aside the fraudulent transfer, or to recover the debt fraudulently discharged, and transfer that right to his own assignee, for the benefit of preferred creditors; or even for the benefit of all his creditors equally. The plea of the defendant S. Marsh, therefore, contains no sufficient defence to any part of the discovery or relief which is sought by the complainant's bill; and it should have been overruled on that ground.

There is also another objection to this plea, which I think renders it invalid, as a plea to the whole discovery and relief to which the complainant is entitled, if all the matters stated in the bill are true. The bill charges, in substance, that when Curtis and Marsh entered into copartnership, the latter agreed to pay Curtis for one half of the stock and goods then on hand; and that but a small part of the amount thus due has been paid. If so, although the firm afterwards became insolvent, Marsh is still an individual debtor of Curtis; and the complainant is entitled to reach that debt by an ordinary creditor's bill, to which the debtor of Curtis is made a party. The plea of this defendant does not state that he is individually insolvent and unable to pay that debt. Nor is there any allegation in the plea of this defendant that Curtis had assigned his interest in that indebtedness to any other person previous to the commencement of this suit.

The decree of the vice chancellor allowing the plea of J. Marsh must therefore be reversed with costs; and a decretal order must be entered overruling that plea with costs, and requiring the defendant J. Marsh to pay the

costs and put in his answer to the bill within thirty days, unless a further time is allowed to him by the vice chancellor for that purpose.

> Decretal order accordingly.