## COURT OF APPEALS

### William A. Porter agt. Richard F. Clark and John L. Williams.

An *assignment*, made for the benefit of creditors, which authorizes the assignee to sell the assigned property *on credit*, is *fraudulent* and *void* as against the creditors of the assignor. (*See Nicholson* agt. *Leavitt*, 2 *Seld*. 510.)

After the assignee has taken possession of the assigned property, a *supplementary assignment*, or *direction* of the assignor to the assignee that it was intended to have the property sold for *cash* only, and authorizing and directing the assignee to sell it for cash only—not on credit—does not help the matter, or cure the difficulty at all; because, the original assignment, as between the parties, *vests* the *title* of the property in the *assignee*, and the assignor has not the power to modify or change the terms of the transfer in any respect; and certainly not to the prejudice of a creditor whose lien on the property had attached, by the institution of supplementary proceedings under the Code.

Potter agt. Clark and Williams.

Under the Code, a *receiver*, appointed by a judge in the course of proceedings supplementary to an execution, can maintain an action to recover property, *real* and personal, which the judgment-debtor has transferred to the defendant by a conveyance—good as between the parties to it, but void as to creditors, on account of fraud. (*See Chautauque County Bank* agt. *White*, 2 *Selden*, 236, *where the same principle is applied to the powers of a receiver appointed previous to the Code.*)

DENIO, J., *dissenting*, as to applying the principle to *real* estate—*holding*, that to allow a receiver to recover and sell the real estate of the debtor, under these proceedings, would subvert the system so carefully devised for the application of that species of property to the payment of debts—that is, by creating a *lien* taking date at the docket of the judgment, enforcing that lien by a sale on execution, and then instituting an auction for fifteen months among such creditors as before the expiration of that time shall have acquired like liens upon the same land. Creditors' bills, before the Code, did not change this method of applying real estate to the payment of debts. If the receiver could sell real estate under these proceedings, it would cut off all right of *redemption* to the creditors, and to the debtor and his heirs and assigns.

*September Term*, 1853.

DEMURRER.—This action was brought by the plaintiff, as receiver, to set aside an assignment executed by the defendant Williams, to the defendant Clark. The assignment was made on the 5th of January, 1850. It embraces all the property and effects of the assignor, except such articles as are by law exempt from levy and sale. It is made for the benefit of creditors, giving preferences. The assignee is authorized, *by* the terms of the assignment, to sell and dispose of the property assigned, either at public or private sale, to such person or persons, at such price or prices, and on such terms and conditions, *and either for cash or credit*, as in his judgment may appear best, and most for the interest of the parties concerned, and to convert the same into money, and to collect the debts, &c. On the 27th of February, 1850, the Dutchess County Iron Company recovered a judgment against Williams for $508.32 upon a debt contracted before the assignment. Upon which judgment an execution was issued, on the 28th of February, to the sheriff of the proper county, and returned unsatisfied.

On the 28th of March, 1850, an order was made by one of the justices of the supreme court, pursuant to the provisions of the Code relating to proceedings supplementary to execution,

requiring the judgment-debtor to appear and answer before a referee, appointed for that purpose, on the 30th of the same month. On the 4th of April following, the *same* judge made an order appointing the plaintiff a receiver of the property of the judgment-debtor, and also, by order, forbade a transfer or other disposition of the property of the judgment-debtor, not exempt from execution, or any interference therewith.

On the 30th of March, 1850, Williams executed and delivered to Clark an instrument, whereby, after reciting that doubts had arisen whether, by the assignment of the 5th of January, the assignee had the power to sell the property assigned *on credit*, and that it was intended to have it sold for *cash* only, the assignee was authorized and directed to sell the property for cash only. No assignment was ever executed by the judgment-debtor to the receiver.

It is admitted, that immediately upon the execution of the assignment, the assignee took possession of the assigned property. That he had, in fact, sold only for cash; and that he had applied a part of the moneys received by him, as assignee, to the payment of the preferred debts.

On the 11th of April, 1850, another execution was issued upon the judgment, to the sheriff of Columbia, *and* Samuel Bryan, who owed the judgment-debtor $191.50, at the time of the assignment, paid the debt to the sheriff, to apply upon the execution. The assignee claims that he is entitled to receive this debt under the assignment. The cause was heard upon the pleadings. Some of the facts above stated do not appear in the pleadings, but were admitted by the counsel upon the argument.

The court below held the assignment void on account of the provision authorizing the assignee to sell on credit; that the supplementary paper did not aid it; and that the suit was well brought in the name of the receiver. It then made special provisions for applying the assigned property, real and personal, to the payment of the plaintiff's judgment.

MARTIN PECHTEL, *for appellants.*
JOHN H. REYNOLDS, *for respondent.*

DENIO, Judge.　1.　Whatever doubt may formerly have existed, it is now settled by this court that the provision in the assignment authorizing the trustee to sell the assigned property on credit, renders the transfer fraudulent and void, as against the creditors of the assignors. (*M. S. Court of Appeals, October Term*, 1852, *Nicholson* agt. *Leavitt. See* 2 *Seld.* 510.)

2.　The instrument executed on the 30th day of March, 1850, was wholly without effect to change the legal character of the assignment.　As between the assignor and assignee, that instrument had vested the title to the property in the latter.　Whether both parties to the assignment could, by one or more proper instruments, executed by the assignee as well as the assignor, have reformed the former instrument in the particular in which it is objected to, is a point upon which it is unnecessary to express an opinion.　But certainly the assignor who had parted with all his estate in the property, could not alone modify or change the terms of the transfer in any respect.　The supplementary paper was only a direction by the debtor to his assignee not to make use of a power expressly given in the instrument of transfer.　This he might obey or disregard according to his pleasure.

3.　Whether a receiver, appointed by a judge in the course of proceedings supplementary to an execution, can maintain an action to recover property which the judgment-debtor had transferred to the defendant by a conveyance, good as between the parties to it, but void as to creditors on account of fraud, is a more important question.　Believing that there is a difference between real and personal estate in this respect, I will first examine the question as to the latter species of property.　By the practice of courts of equity, receivers are officers of the court, appointed to take care of property in its hands belonging to its suitors.　They have no estate in the property which will enable them to sustain an action respecting it, before it is delivered to them, unless, indeed, the title has been assigned to them.

To accomplish the purposes of justice, the courts have com-
pelled transfers to be executed in their favor, and have author-
ized them to sue in the name of the party in whom the legal
interest resided. This was the state of the law, independent
of legislative provision.

By an act passed in 1845, receivers were authorized "to sue
in their own names for any debt, claim, or *demand* transferred
to them, *or to the possession and control of which they were en-
titled as such receivers.*" (*Laws* 1845, *p.* 90.) This statute would
authorize the plaintiff to prosecute, in his own name, any of the
debtors of Williams, but is scarcely broad enough to warrant a
suit to compel the specific delivery to him of chattels belonging
to Clark. It is sufficiently comprehensive to allow a recovery
in the name of the receiver for a demand arising upon tort.
(*Gillett* agt. *Fairchild*, 4 *Denio*, 80; *Hudson* agt. *Platt*, 11
*Paige*, 183.)

By the 299th section of the Code, which is a part of the
chapter relating to proceedings supplementary to the execu-
tion, it is declared, "that if it appear that a person or corpora-
tion, alleged to have property of the judgment-debtor, or in-
debted to him, *claims an interest in the property adverse to him*,
or denies the debt, such *interest*, or debt, shall be recoverable
*only* in an action against such person or corporation by the re-
ceiver; but the judge may, by order, forbid a transfer, or other
disposition of such property, or interest, till a sufficient oppor-
tunity be given *to the receiver to commence the action*, and pros-
ecute the same to judgment and execution."

By § 244 of the Code, a receiver may be appointed after
judgment, among other things, "to carry the judgment into
effect;" and the receiver under these provisions, supplement-
ary, &c., is a receiver of the property of the judgment-debtor.
(§ 298.)

The judgment against Williams, in the original suit, entitled
the plaintiff therein to process of execution against the prop-
erty of the former, under which the personal effects might be
immediately sold to raise the money adjudged to be due. Such
process in this case had proved fruitless. The object' of the

receiver, under these proceedings, is to carry the judgment into effect; and for that purpose § 297 provides that the judge may order "any property of the judgment-debtor, not exempt from execution, in the hands either of himself or any other person, or due to the judgment-debtor, to be applied towards the satisfaction of the judgment."

After that follows § 299, before quoted, providing for a suit by the receiver, where there is an adverse claim to the property, or a denial of the debt, if the subject is a chose in action. The sense of all the provisions connected with the act of 1845, is that as to chattels and choses in action which the debtor confessedly owns, the receiver is to take them into his possession; but when there is another claimant, not a party to the proceeding, his rights are not to be determined in a summary way by the judge, but the receiver is to bring an action. In this case, Clark, the assignee, had in his possession chattels and choses in action, which had belonged to Williams: but the title to which Clark claimed to have acquired by means of the assignment. The receiver, acting for the creditor, insisted that the assignment was void. In my opinion, this presented the precise case contemplated by § 299 of a claim of an interest in property adverse to the debtor. This action was brought to recover such interest—that is, to recover the property. As it was directed to be brought by the receiver, it ought, of course, to be brought in his name, there being no intimation in the statute that it should be brought in the name of any other person.

But it is argued, that the defendant Clark, having a conveyance from Williams, the plaintiff, who, it is argued, represents Williams, cannot recover, because Williams himself would have been estopped by the conveyance, which was valid as to him. This is an incorrect view of the case. The plaintiff, as receiver, and an officer of the court, represents the rights of the creditor; and when the question, whether the property which passed by the assignment belongs to the debtor or the assignee, is presented, it is precisely the same issue which is involved when an action is brought by a party claiming to recover against a

sheriff, property which has been seized on execution. The inquiry is, whose property is it, *quoad* creditors and their legal remedies. The receiver stands in the same relation which the sheriff occupies in that class of controversies.

When the court below pronounced that the assignment was fraudulent and void as to creditors, it declared, in effect, that the receiver, as the officer of the court and of the law, appointed to administer the debtor's effects, which were subject to the remedies of his creditors, was entitled to the property.

I do not find that this question has ever been decided, though there are *dicta* on both sides. In *Hyde* agt. *Lynde*, (4 *Comst.* 387,) BRONSON, J., expressed the opinion that the receiver of the effects of a grantor could not impeach the conveyance on the ground of fraud against creditors. He, however, said it was not necessary to decide that question, as there was no proof in the case then before the court, that the transaction sought to be avoided was a fraud against any one.

In *Gouverneur* agt. *Warner*, (1 *Sand. Sup. C. Rep.* 624,) the court declared, that a receiver in a creditor's suit might set aside a fraudulent transfer by the debtor, though the remark was not perhaps necessary to the decision of the question then before the court. There are a great many cases in the books where receivers have been permitted to question, and have succeeded in setting aside conveyances, where the parties whose property they were administering could not have been heard to impugn the transaction. (*Leavitt* agt. *Palmer*, 3 *Com.* 19; *Gillett* agt. *Moody*, *id.* 479, and *Brower* agt. *Hill*, 1 *Sand. S. C. R.* 629, *are cases of that kind.*) It is true, that the objection to the transfers was not solely that they were fraudulent against creditors, but that they were illegal under a statute. Still they were cases where the assignors could not have maintained an action grounded on an allegation of their illegality. They would have been met by the maxim, *in pari delicto potior est conditio defendentis.* (*M'Collum* agt. *Gourlay*, 8 *John.* 147.)

But I think the right of a receiver, appointed at the instance of a creditor, to maintain an action in disaffirmance of a title fraudulently created by the debtor, is well-founded upon gen-

Potter agt. Clark and Williams.

eral principles of law. The law declares such titles fraudulent as against creditors, but valid as between the parties to the conveyance. But creditors have seldom, if ever, a right with their own hands to take their debtors' property to satisfy their debts; they can do it only through such instrumentalities as the law has provided for the purpose; where the debtor has tangible property, the creditor acts by the sheriff through the ordinary process of execution. Where the property is of an equitable character, or, being chattels, is concealed, or fraudulently conveyed, a creditor's bill, under the former practice, or an order after execution under the Code, is the means which the law has provided for obtaining satisfaction of the judgment. If, in either case, a conveyance from the debtor is set up against the remedy, and it is proved to be fraudulent, it forms no impediment to the course of justice, but is declared void, and removed out of the way.

In principle, it is quite immaterial what particular form of remedy the creditor is making use of. It is enough that it is one which the law has furnished, and that it is adapted to his case. If the conveyance is void as to creditors, it forms no obstacle to the enforcement of any remedy.

4. If the proceeding, adopted by the creditor in this case, was one which affected the real estate of the debtor, and provided for its application towards the debt, the preceding remarks would dispose of that subject also. But I am of the opinion that such is not the case. The method provided by law for subjecting the debtor's lands to the payment of his debts, is by creating a lien taking date at the docket of the judgment, enforcing that lien by a sale on execution, and then instituting an auction for fifteen months among such creditors as, before the expiration of that time, shall have acquired like liens upon the same land. The proceedings by creditor's bill before the Code, did not change this method of applying real estate to the payment of debts. It was limited to a decree of satisfaction out of "the personal property, money, or things in action belonging to the defendant." (2 R. S. 174, § 39.)

A bill could be sustained to remove a fraudulent obstruction

to the remedy against the real estate; but this was a suit of a different character, and did not require an execution to be returned unsatisfied. (*M'Elwain* agt. *Willis*, 9 *Wend.* 548; *Brinckerhoff* agt. *Brown*, 4 *J. C. R.* 671.)

The proceeding provided by the Code, by an order after excution, is not framed to remove impediments to an execution against real estate. It does not authorize a judgment affecting any adverse claimant, nor does it provide for a suit by a receiver, except as to property which he would have a right to take into possession, and administer, if there was no hostile claim. To allow a receiver to sell the real estate of the debtor under these proceedings, would subvert the system so carefully devised for the application of that species of property to the payment of debts. If he could sell real estate, it would cut off all right of redemption by other creditors, and deprive the debtor and his heirs and assigns of the privilege of redeeming, secured to them by the statute referred to. (*See The Chautauque County Bank* agt. *White*, 6 *Barb. S. C. R.*, and *cases referred to; reversed*, 2 *Seld.* 236.)

Assuming that the receiver has no authority to sell the real estate of the debtor, there could be no propriety in allowing him to maintain an action to remove an impediment created by a fraudulent conveyance of it. If any one can sustain such an action, it is the creditor; but as bills for discovery are abolished, (*Code*, § 389,) it is not easy to suggest an adequate motive for such an action. The creditor may cause the land to be sold on his execution, and rely on being able to show the conveyance by the debtor to be fraudulent; and perhaps he may still maintain an action to have the conveyance declared void, notwithstanding he is deprived of a discovery by answer, on the ground that a beneficial sale by the sheriff cannot be had until the obstruction is removed. He can examine the parties, as witnesses, at the trial, either in an action to remove the obstruction, or in an ejectment after the sale, and in this way have the advantage formerly obtained by an answer to a bill of discovery. In this case, the evidence of the fraud being contained in the written transfer, and the question being one of law, and now

well-settled in this court, the creditor cannot be embarrassed as to his remedy.

The judgment of the court below is in accordance with these views, except that the general expressions by which the defendant, Clark, is required to assign and deliver to the plaintiff *all the property* in his possession, or under his control under the assignment, probably embraced the real estate. It must, therefore, be modified, by inserting the word *personal* before the word *property*, where required to make it correspond with the opinion which has been expressed.

WILLARD, Judge. I. The first question is, whether a receiver, appointed by a justice of the supreme court, under supplementary proceedings, instituted by a judgment-creditor upon the return of executions unsatisfied, in pursuance of the provisions of the Code of 1849, §§ 292–298, can, after perfecting his appointment, maintain an action in his own name, to set aside an assignment of real and personal property, made by the judgment-debtor, on the ground of fraud, without having first received from such debtor an assignment to himself as such receiver?

By § 298 of the Code of 1849, the receiver appointed under supplementary proceedings, possesses the like authority as if the appointment were made by the court, according to § 244.

By § 244, the courts are authorized to appoint receivers, and grant the other provisional remedies, according to the then present practice.

The act of April 28th, 1845, (*L. p.* 90, 91,) enacts, that any receiver, appointed by virtue of an order or decree of the court of chancery, may take and hold real estate upon such trusts, and for such purposes, as the court may direct, subject to the further order or direction of the court; and the second section empowers receivers, &c., appointed by an order or decree of the court of chancery, to sue in their own name for any debt, claim, or demand, transferred to them, or to the possession or control of which they are entitled as such receiver.

The CHANCELLOR, in *Wilson* agt. *Wilson*, (1 *Barb. Ch. R.* 594,) thought the act of 1845 was not broad enough to transfer

the title of real estate to the receiver, by the mere order of the court, and without an actual conveyance from the party to the suit in whom such legal title was vested. But I think that since the Code, no such conveyance is necessary to vest the title in the receiver; and that real and personal property are, in this respect, placed upon the same footing. The sections before cited provide for the appointment of receivers *of the property of the judgment-debtor*, &c.

Section 464 enacts that the term "property," as used in the Code, shall include "property real and personal;" and §§ 462 and 463 define what is meant by "real property," and by "personal property." The first is declared to be co-extensive with lands, tenements and hereditaments, and the other to include money, goods, chattels, things in action, and evidences of debt.

Before the Code, it was settled that the order appointing a receiver, when the appointment was completed, vested in him all the property and effects of the debtor subject to the order, without an assignment. (*Mann* agt. *Pentz*, 2 *Sand. Ch. R.* 257; *Wilson* agt. *Allen*, 6 *Barb. S. C. R.* 542.) Those cases speak only of personal property, and doubtless the real property did not, before the Code, pass by such order, and was only directed to be conveyed under peculiar circumstances. (*Scouton* agt. *Bender*, 3 *How. Sp. T. R.* 185; 6 *Barb. S. C. R.* 602, *per* HARRIS, J.) But since the Code, I think, the order has the like effect upon the debtor's real estate, as upon his personal estate, and that the whole, by form of the order, becomes vested in the receiver when the appointment is completed. The language of the Code effectually removes the difficulty which the CHANCELLOR suggested in *Wilson* agt. *Wilson*, *supra*. It puts real and personal property in the same category.

The statute of frauds affords no objection to this view. It is there enacted, (2 *R. S.* 134, § 6,) that no estate, or interest in lands, &c., shall hereafter be created, granted, assigned, surrendered, or declared, unless by *act or operation of law*, or by deed or conveyance in writing, subscribed by the party, &c., or by his agent, &c. It was competent for the legislature to re-

Potter agt. Clark and Williams.

move that impediment to conveyances, or to declare what act or operation of law should work a transfer of title. They seem to have done so by giving a legislative definition to the word " property," so as to embrace real as well as personal property.

II. The receiver, appointed under supplementary proceedings, does not stand merely in the place of the debtor, but represents the creditors, and can thus impeach the fraudulent sales of the debtor.

· The assignment sought to be set aside, in this case, was good between the parties. The fraudulent grantor could not impeach his own grant. (*Osborn* agt. *Moss*, 7 *J. R.* 161; *Jackson* agt. *Gurnsey*, 16 *J. R.* 189; *Jackson* agt. *Cadwell*, 1 *Cowen*, 622; *Leah* agt. *Kelsey*, 7 *Barb. S. C. R.* 466; *Jewett* agt. *Palmer*, 7 *J. R.* 65; *Padgett* agt. *Lawrence*, 10 *Paige*, 170; *Dermott* agt. *Stanley*, 3 *Barb. Ch. R.* 403.)

. But the receiver, succeeding to the right of the debtor, represents other interests than those of the debtor. He comes in by the act of the law, and not by the act of the party. Before the Revised Statutes it was held, in *Osborn* agt. *Moss*, (7 *J. R.* 161,) that the personal representatives of the fraudulent grantor could not invalidate the grant; and the reason was, that the statute renders the sale void only as against creditors and·purchasers, and leaves it valid between the parties and their representatives. But now, as remarked by SAVAGE, Ch. J., in *Dox* agt. *Burkinstone*, (12 *Wend.* 543,) under our statute, executors and administrators have a new character, and stand in a different relation from what they formerly did, to the creditors of the deceased persons with whose estates they are entrusted. They are not now the mere representatives of their testator or intestate. They are constituted trustees, and the property in their hands is a fund to be disposed of in the best manner for the benefit of creditors. (*See* 2 *R. S.* 87, § 8; *id.* 449, § 17, &c.) The same doctrine was affirmed in *Babcock* agt. *Booth*, (2 *Hill*, 181,) and was approved by the CHANCELLOR in *Brownell* agt. *Curtiss*, (10 *Paige*, 210–218.) Since executors and administrators have come to represent the rights of the creditors gen-

erally, they have been allowed to impeach the conveyances of their testator or intestate, when fraudulent against creditors.

Upon the same principle, the receiver of an insolvent corporation is allowed to question the fraudulent and illegal acts of the corporation. He represents both the creditors and stockholders. (*Gillett* agt. *Moody*, 3 *Com.* 476; *Leavitt* agt. *Palmer*, *id.* 19; *Brown* agt. *Hill*, 1 *Sand. Sup. Court R.* 629; *Hyde* agt. *Lynch*, 4 *Com.* 392.)

The receiver is bound by the legal acts of the corporation. It is only those which are illegal that he can impeach. The receiver appointed under the Code represents the interests of the creditors, as well as of the debtor. He is a trustee for all parties, and is bound to apply the effects of the debtor, faithfully to the payment of the debts, according to their legal or equitable priorities; and if anything remains, to restore it to the debtor or his grantee. He has no power to set aside legal and valid acts of the debtor; but such as are illegal and forbidden by law he can successfully assail. These principles are legitimate deductions from the cases which have been cited. And they are carried out to their consequences in the Code of 1851, (§ 298,) which forbids the appointment of more than one receiver of the same judgment-debtor, though there may be separate proceedings in favor of different creditors. It shows that the receiver is a trustee for all.

The act which the receiver seeks to avoid in this case, was an illegal act of the debtor. The object of this action is to set aside an assignment made by the debtor, as is alleged, with intent to defraud the creditor under whose judgment and execution the plaintiff was appointed receiver, and the other creditors of the assignor. Such conveyance was void at common law, and is expressly forbidden by the statute. (2 *R. S.* 137, § 1.) It is void as against the creditors of the party making it, though good as between him and his grantee. The plaintiff representing the interest of the creditors, has a right to invoke the aid of the court to set aside the assignment. He stands, in this respect, in the same condition as the receiver of an insolvent corporation, or as an executor or administrator, and, like

them, can assail the illegal and fraudulent acts of the debtor whose estate he is appointed to administer.

These views are greatly strengthened by the recent decision of the court of appeals in the case of *The Chautauque County Bank* agt. *White*. The supreme court in the third district (*see* 6 *Barbour*, 589) held, in that case, among other things, that a receiver in a creditor's suit could not take such a title in the real estate of the judgment-debtor, even under an assignment made by the latter in pursuance of an order of the court, as to authorize the court to direct him to sell such real estate, and apply the proceeds to the payment of the creditors having liens thereon; nor so to divest the judgment-debtor of his title to the real estate as to prevent a judgment, subsequently recovered against him, from becoming a lien thereon. The court of appeals held the contrary on both these points. (*The Chautauque County Bank* agt. *White*, 2 *Seld.* 236.)

According to the decision of the supreme court, the real estate still remained in the debtor, notwithstanding the order appointing a receiver, and notwithstanding an actual conveyance by the debtor to the receiver, in pursuance of the order of the court. This judgment was reversed. The order appointing a receiver in that case was made before the Code. The case is therefore in point, to show that, under the old practice, the title passed to the receiver under an assignment, made in pursuance of an order of the court. The argument in favor of its passing since the Code is much stronger than it was before.

III. The assignment in this case was made by the defendant Williams to the defendant Clark on the 5th of January, 1850, in trust, for the payment of the debts of the assignor, according to an order of preference therein specified. It embraced all the real and personal property of the assignor; and it authorized the assignee "to sell and dispose of the same, either at public or private sale, to such person or persons, for such price or prices, and on such terms and conditions, and either for cash or for credit, as in the judgment of the assignee may appear best," &c.

In *Barney* agt. *Griffin*, (2 *Com.* 365,) BRONSON, J., in giving

the opinion of the court, said, that an assignment by an insolvent debtor, of his estate, is fraudulent and void, when, by the terms of the deed, the trustees are authorized to sell the property on credit. It does not appear by the report that the whole court acquiesced in that decision; and there were other grounds taken by the learned judge, and appearing on the face of that assignment, rendering it void, and upon which the other members of the court may have acted.

This has led the superior court of New-York to question the *dictum* of BRONSON, J. (*See* 4 *Sand. Sup. Co. R.* 293.) But I understand this court, in a subsequent case, affirmed the principle above stated by BRONSON, and that it is no longer an open question by this court. (*See Nicholson* agt. *Leavitt,* 2 *Seld.* 510.)

The assignment must, therefore, be set aside, unless the subsequent assignment, made by the assignor on the 30th of March, 1850, cured the defect.

IV. The subsequent assignment was made after the rights of the creditor had attached, and recited the assignment of the 5th of January; and that doubts had arisen, whether the authority to sell on credit did not vitiate the assignment, and proceeded to direct that the sale should be for cash only. It is believed that the assignor had divested himself of all control over the property by the assignment of the 5th of January; and that he could neither revoke nor alter it—and certainly not to the prejudice of a creditor whose lien on the property had attached by the institution of supplementary proceedings under the Code.

The judgment of the supreme court must be affirmed.

NOTE.—The decision of the court was in accordance with the opinion of Judge WILLARD, the court being governed on the 4th point discussed by Judge DENIO, by the case of *The Chautauque County Bank* agt. *White,*—since reported in 2 *Seld.* 236.