In THE MATTER OF THE ACCOUNTING OF EDMOND RAYMOND, ASSIGNEE, ETC.

*General assignment — fraudulent conveyance from the assignor to the assignee — it cannot be attacked upon the accounting of the latter before the county judge.*

One Seeley made a general assignment for the benefit of his creditors to one Raymond. On the same day on which the assignment was made, and prior to the execution thereof, Seeley gave Raymond a bill of sale of certain articles of personal property belonging to him, with the intent that such property should be held for the benefit of Seeley, and for the purpose of withdrawing the same from the reach of his creditors. Thereafter Raymond was removed from his position as assignee, upon the petition of Seeley and certain of his creditors, and a new assignee was appointed. Upon Raymond's accounting, it was sought to charge him with the value of the property received by him under the bill of sale.

*Held*, that the validity of the transfer and the liability of Raymond to Seeley's creditors could not be determined in that proceeding.

*It seems*, that these questions could be determined in an action brought by the new assignee against his predecessor.

APPEAL from a final decree made by the Saratoga County Court upon the accounting of Edmond Raymond as general assignee of one Sidney Seeley.

Seeley made a general assignment to Raymond for the benefit of creditors. Baucus was appointed assignee in the place of Raymond, removed. A petition was presented by the National Bank of Schuylerville, a creditor of Seeley, to the County Court, asking for an accounting of Raymond, assignee. Seeley, the assignor, also petitioned for a like accounting. A citation was issued and served, and the matter was referred to a referee. The parties appeared

before the referee, viz., Raymond, the Bank and Seeley, and presented their proofs. The referee made a report, charging Raymond with a balance of $1,111.31, and directed that this sum should be paid to the bank on its claim. The referee declined to charge the assignee with the sum of $11,460 received for certain potatoes, and declined to credit him with the sum of $8,589.13 hereinafter mentioned in the opinion of the court. The parties appeared before the County Court and were heard on applications to confirm and to modify the report. The court confirmed the report and ordered accordingly. The bank and Baucus, the substituted assignee, excepted and appealed.

On the hearing before the referee, the creditors and Seeley offered evidence tending to prove certain facts. This evidence was considered by the County Court; and the court found certain facts, which are set forth in the case. On these facts, the creditors and the substituted assignee asked the court to charge Raymond with an additional amount of $4,007.81, and interest, which the court refused to do.

*Charles S. Lester*, for the National Bank of Schuylerville and A. Baucus, trustee, and Sidney Seeley, appellants.

*J. W. Hill*, for Edmond Raymond, respondent.

LEARNED, P. J.:

The first point made by the respondents is that the appellants failed to except to the report of the referee; and therefore no review could be made by the County Court. (*Levy's Accounting*, 1 Abb. N. C., 177.) But the case before us states that all the evidence was submitted to, and considered by, the court. Nor does it appear that any objection was made, before the County Court, to the hearing of the question now presented by this appeal. The case seems to have been prepared with the view of presenting the point in issue in a compact shape. And it would be unreasonable to dismiss this appeal for a defect which is really only formal.

The facts on which the question is raised are these: On the same day on which the assignor made his assignment, he executed to the assignee a bill of sale of some potatoes and a canal boat, which bill of sale was dated the day previous; and the assignee took possession of them. It was intended by the parties that this

property should be held and disposed of by Raymond for the bene-
fit of Seeley. The bill of sale was made in contemplation of the
general assignment, and with the purpose of withdrawing the prop-
erty from the creditors of Seeley. The potatoes were sold by Ray-
mond for $11,460. Raymond claimed to have paid, for the benefit
of Seeley, out of the moneys, $8,589.13, leaving a balance of
$2,870.87, not paid to Seeley or accounted for. Among the items
so claimed to have been paid by Raymond out of these moneys is a
note, called the Ames note, of $1,136.94, which was in fact paid
by Seeley. The amount of this note, added to the above balance,
makes $4,007.81, which sum the creditors and the substituted
assignee claim should be charged to Raymond as assets, now
remaining in his hands, on this accounting. Thus the question
which the appellants present is this : One person makes a transfer
of property to another, alleged to be fraudulent as to the creditors
of the former, in contemplation of the assignment about to be
made, and then makes a general assignment to the same person, for
the benefit of creditors. An accounting of the assignee is had
before the county judge, after a new assignee has been appointed.
Can the judge, on such accounting, and on behalf of the creditors
of the assignor, investigate the transaction, and if he should decide
that the transfer was fraudulent, compel the assignee to account
for and pay over the property, or the avails thereof, thus fraudu-
lently transferred before the assignment ? In examining this ques-
tion we must first observe that the property thus fraudulently
transferred is not, in terms, held on the trusts of the assignment.
The assignor has a right to compel the performance by the assignee
of these trusts. But if the assignor, prior to the making of the
assignment, had transferred property to the person who was after-
wards assignee, in fraud of the creditors of the assignor, such
assignor could not afterwards reclaim that property. Though void
as to his creditors, the transfer would be good as to him.

The finding in this case is that the potatoes were transferred, to
be held and disposed of for the use of Seeley. If this trust were
void as to Seeley's creditors, still he could not assert its invalidity.
If it were a valid trust, it could only be enforced by Seeley ; and
that too, not in this proceeding, but in some independent action.

Hence it follows that the assignee cannot be held to an account-

ing here, on the ground that the property transferred was part of the assigned property, and was taken by the assignee on the trusts of the assignment. Indeed, the claim of the creditors and of the assignor is directly contrary to this view. They claim to hold the assignee, on the ground that the prior transfer was fraudulent as to the assignee, and that he could repudiate it; that it was his duty to do so, and to hold the property as assignee and adversely to the transfer.

Again, we do not see that the assignor has any right of this kind. Assuming that the transfer was fraudulent as to his creditors, Seeley has no right to attack that transfer, directly or indirectly. Whatever right his creditors may have, it is plain that he cannot, by the indirect proceeding of calling the assignee to an accounting, under the trusts of the assignment, reclaim property, transferred by him, previously to the assignment, in fraud of his creditors. Nor can he, in this indirect manner, reclaim this property for his creditors. To pursue that property may be their right, but is not his.

We pass then to the rights of creditors of Seeley. The appellants' compare the position of the assignee to that of an executor. And it may be worth while to look briefly at the course of the law in similar cases as to executors. Where a person had made a conveyance of goods, fraudulent as to creditors, his executor could not, before the Revised Statutes, reclaim the goods. (*Osborne* v. *Moss*, 7 Johns., 161.) The remedy of the creditor was to treat the fraudulent grantee as executor *de son tort*. But since the Revised Statutes the personal representative of the grantor may controvert the validity of the sale. (2 R. S., 449, § 17; *Babcock* v. *Booth*, 2 Hill, 185.) And ordinarily he alone. (*Bate* v. *Graham*, 11 N. Y., 237.) Still, however, the voluntary assignee of the assignor could not impeach the validity of a fraudulent transfer (*Brownell* v. *Curtis*, 10 Paige, 210, at 219); although a receiver in proceedings supplementary might. (*Potter* v. *Clark*, 12 How. Pr., 107.) But the act of 1858 (chap. 314) gave power to an assignee, as well as to an executor, etc., to " disaffirm, treat as void and resist all acts done, transfers and agreements made in fraud of the rights of any creditor."

Now it is insisted by the appellants that the assignee cannot sue himself in order to disaffirm the fraudulent transfer; and therefore

that, on his accounting, the county judge may pass upon the question of fraud in the transfer, and charge him with any property thus fraudulently received. And they rest upon the authority given by chapter 466 of 1877, amended by chapter 318, Laws of 1878, especially by subdivision 2 and subdivision 9, section 20. These subdivisions give the county judges such powers as the surrogate has in reference to the accounting of an executor.

It seems to be settled that a surrogate has jurisdiction to pass on the validity of a personal liability of an executor to the estate which he represents (*Gardner* v. *Gardner*, 7 Paige, 112); and of a debt from the testator to the executor personally. (*Kyle* v. *Kyle*, 67 N. Y., 400.) In the language used in these cases, and those like them, the courts have spoken of debts, or claims, which existed between the testator and the person appointed his executor, in favor of one or of the other. And they have said that, for the reason that the executor could not sue himself, and might not pay himself, the claims must be adjusted before the surrogate. (*Kyle* v. *Kyle*, *ut supra.*) But none of these cases are quite like the present, inasmuch as the alleged liability here is one which in the analogous relationship could not exist between the testator and the person named as executor. No liability, as is well known, could arise in favor of the fraudulent assignor, or in favor of one claiming under him but not representing creditors.

To illustrate: A legatee, on an accounting of an executor, could insist on an adjudication that the executor pay a debt which he had owed to the testator, and which he still owed to the estate. But we suppose that the legatee, who is not a creditor, could not insist that an executor should disaffirm, etc., a conveyance made by the testator to some third person in fraud of creditors; and if not, then certainly not that the executor should account for property transferred to him in like fraud. This shows that the general language used as to the liability of an executor to account before the surrogate for a debt which he owes the estate cannot safely be extended to include, as such a debt, the right which the executor has to disaffirm, etc., conveyances which are fraudulent as to creditors. That, it would seem, is a right which, on general principles, exists solely for the benefit of creditors, not for any others interested in the estate. As to any others than creditors of the testator, it would

seem that there would be no right to disaffirm. We do not decide this point, but use it, by way of illustration, to show that the alleged liability in such cases would not be one owing to the testator. And in the present case it is not a liability owing to the assignor. If the transfer had been to a third person, there would have been simply a right of action which the assignee, in the interest of creditors, might exercise, and which, in a proper case, he ought to exercise.

The neglect of the assignee, in a proper case, to bring the necessary action against a third party, to set aside such a fraudulent transfer, might make him liable to the extent of the loss sustained. But the question of his liability in such a case would plainly involve other considerations, than the mere amount of property alleged to have been fraudulently transferred. It would involve the assignee's knowledge that the transfer was fraudulent, and the prospect of a recovery which would be beneficial to the estate. And it is worth noticing here that, while the findings hold that it was intended by the parties that the potatoes should be held for the benefit of Seeley, they do not find that Raymond accepted them with knowledge of a fraudulent design. Indeed it would seem that a large amount of the avails was used to pay certain creditors of Seeley.

There is certainly a serious difficulty in holding that when A. becomes assignee of B., for the benefit of creditors, the acceptance of the assignment authorizes the county judge, on an accounting, to investigate any transaction, not barred by the statute of limitations, by which, in previous years, and before the assignment, B. may have sold property to A., and to hold, after such investigation, that the sale was fraudulent, and to compel A. to account for the avails. Certainly nothing but necessity would justify such a doctrine.

And again, the assignee is now required to give bonds for the due accounting for all moneys received by him, etc. Now, if the county judge can determine that the avails of the property previously transferred are moneys received by the assignee under his trust, then the sureties of the assignee may be made liable, not merely for the property actually transferred by the assignment, but for the avails of property long before transferred, on trusts entirely different, or on no trusts at all.

These are some of the reasons why we should be very reluctant to adopt the principle urged by the appellant, even, in a case of necessity. But we think that no such case exists here. It will be seen by reference to the opinion in *Kyle* v. *Kyle*, and to other cases, that the reason for charging an executor, on his accounting, with a debt which he owed the testator, is the necessity of the case, because he could not sue himself. That reason ceases when the alleged debtor is not the executor. And the reason why the appellants claim that an assignee should be chargeable with property which had been previously transferred to him in alleged fraud of creditors, is because he, in like manner, could not sue himself. But no such difficulty exists in this case. There is a new assignee. He is abundantly capable of bringing and maintaining any proper action, as such assignee, against Raymond, who is assignee no longer. The avails of the potatoes, as has been shown, were not properly a part of the property assigned by the general assignment, even though Raymond may be chargeable therewith in behalf of creditors. They have never come into his possession in his character as assignee. No necessity exists for charging him therefor, on his accounting, if any such necessity would arise under any circumstances.

We do not see why an assignee, who should learn that creditors claimed that a previous transfer to him was fraudulent, might not resign and have a new assignee appointed, so that he could defend his rights under the previous transfer in the ordinary modes of litigation, and not be embarrassed by the difficulty of a contest over that question, upon a mere accounting for the property received under his trust. At any rate, as this present case stands, there is no difficulty in the way. The present assignee, Baucus, can sue Raymond for any money fraudulently transferred by Seeley. And in such action the questions involved can be tried in the manner and by the tribunals to which such questions properly belong.

Judgment of County Court affirmed, with costs against appellants.


BOARDMAN, J.:

The transfer of the potatoes, etc., by Seeley to Raymond was valid or voidable. If it was valid, the trust created was separate and independent from that created by the general assignment, and

should not be mixed up with it. Raymond is still trustee under the first transfer, and Baucus is not his successor as to that. If the transaction were fraudulent the title to the property was still out of Seeley when his general assignment was made, and hence did not pass thereby. The creditors of Seeley in equity might attack that transfer as fraudulent. But in neither case do we think the creditors or Baucus, as their representative, could require Raymond to account for property which he did not acquire by virtue of the general assignment, which he did not inventory as assignee, and for which his bondsmen do not purport to be holden. It is a transaction outside of the general assignment, and whether it results in a surplus after discharging a valid trust for the payment of certain of Seeley's creditors, or whether it was fraudulent in fact or in law as to the creditors of Seeley, the remedy must be by action, and not rpon an accounting before the County Court.

I concur, therefore, in the affirmance of the judgment of the County Court.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment of County Court affirmed, with costs against appellants.