## NEW-YORK SUPERIOR COURT.

### GEO. PEGRAM agt. JOSEPH CARSON and HAZELTINE VICKERY.

A statement in a petition for a *discovery of books and papers*, which, in all its material allegations, is capable of being condensed into a sentence like this : We believe your books and letters will help our defence, and if they do, it is material for us that you should show them ; is too vague and indefinite to grant an order of discovery upon, (*The authorities on this question examined, and the principles deducible therefrom stated*)

*New-York, General Term, January,* 1860.

*Present,* BOSWORTH, *Ch. J.,* HOFFMAN, WOODRUFF, PIERRE-
PONT, MONCRIEF, *and* ROBERTSON, *JJ.*

APPEAL from an order denying a discovery of books and
papers.

By the court—HOFFMAN, J. The action is to recover a
quantity of corn, which it is alleged was the property of the
plaintiff, and to the possession of which he was entitled. That
about the 1st of August, 1857, the defendants wrongfully pos
sessed themselves of a part thereof, and, on the 25th of August,
of the remainder. A demand and refusal is stated. The an-
swer set up an ownership in the firm of Starling, McCulloch &
Co., and a right to hold the corn under them.

The petition states that the plaintiff resides in St. Louis,
Missouri, and has in his possession, or under his control, books
of account kept by him in the year 1857, and prior to the
26th of August, containing entries of his accounts and trans-
actions with the firm of *Starling, McCulloch & Company,* and
also entries in relation to the corn in question.

*Also* letters written to him by said Starling, McCulloch &
Company, or one of the members of that firm, during the same
year, and prior to the said 26th of August.

*Also* copies of letters written and sent by the plaintiff to the
said Starling, McCulloch & Company, or one or other of the
members of that firm, in the said year, and prior to the said
26th of August.

*Also* copies of telegraphic communications, which passed
between him and said Starling, McCulloch & Company, or one
or other of the members of that firm, in the said year, and
prior to the said 26th day of August.

The petition then states that the petitioners are advised by
their counsel, and verily believe, that a discovery of all the
aforesaid entries in all books of account of the plaintiff, and of
all the letters, and copies of letters, and telegraphic communi-
cations above mentioned, is material and necessary to enable
them to prepare for the trial of this action; that, by such dis-

covery, they verily believe it will appear that Starling, McCulluch & Company were the owners of, or interested in, the corn in controversy, either jointly with the said plaintiff or otherwise, and were largely in advance to the said plaintiff on account of the same, and had a right to pledge the same to the said defendants, as they did pledge the same.

The statements of the petition, therefore, amount to this: The defendants believe the plaintiff has books, letters, or copies of letters, and telegraphic communications in his possession or control, which will, as the defendants believe, show some title in Starling, McCulloch & Company to the corn in question, and which they are advised by counsel are material and necessary for their defence on the trial. The substance is this, and nothing more: We believe your books and letters will help our defence, and, if they do, it is material for us that you should show them.

There is no allegation of knowledge, or of information from any one, as to the contents of one entry, or of one letter, or communication being pertinent to the question in issue. It is difficult to imagine any statement more vague and indefinite than this.

In *Hoyt* agt. *The American Exchange Bank*, (1 *Duer*, 602; *S. C.*, 8 *How*. 89), a leading case in our own court, the discovery was directed to entries connected with the post note, and Indiana bonds, the subject of controversy in the action. In *Terry* agt. *Nubel* (12 *Legal Observer*, 146,) I had occasion to examine the original petition in *Hoyt* agt. *The American Exchange Bank*, which is not stated in the report. The prayer was, that the defendants might give sworn copies of all entries in any books, &c., in reference to, or showing where, under what circumstances, for what purpose, or consideration, and by and from what person or persons, the post notes of the Morris Canal and Banking Company, and the seventy-three bonds of the state of Indiana, mentioned in the petition, were severally transferred or came into the possession of the defendants. The petition set forth that the defendants had books containing evidence relating to the merits of the cause, *and to the facts aforesaid*, a

schedule of which books were thereto annexed; that the same would prove the allegations of the complaint. The order was nearly in the language of the prayer. Upon an application for a more full and perfect discovery, upon an allegation of the insufficiency of what had been given, an order was made at special term, giving power to a referee to call for and examine all books, papers and documents in the defendant's possession or control, containing entries in reference to the discovery ordered by the previous order. This order was as unlimited, indefinite and sweeping as that we are asked to make in the present instance. Except as to the matter of reference, it would serve as a precedent for this case. Upon appeal to the general term it was discharged, and the course pointed out for the dissatisfied applicant to move for a further discovery in definite particulars, which the return or other papers may induce the court to believe the party has in his possession, and which relate to the matters as to which a discovery has been ordered, and whose existence was shown to be probable.

The view of the subject taken by Mr. Justice HARRIS, in *The Commercial Bank of Albany* agt. *Dunham* (13 *How. Pr. R.* 561,) is applicable to this case. "The plaintiffs specify no entry, or book even, which they propose to use as evidence upon the trial. They ask for license to search, at their own pleasure, all the books in which all the transactions of the defendants have been recorded for a period of eight years, in the expectation that, somewhere within the wide range, they may find some evidence that will aid them in sustaining the issue upon the trial."

Justice INGRAHAM, in *The People* agt. *The Rector, &c., of Trinity Church*, (6 *Abbott*, 177), has expressed himself with equal decision against the right of a party to a discovery, upon allegations in a petition not more vague and indefinite than those in the present case.

In *Davis* agt. *Dunham* (13 *Howard*, 425,) the court, at general term, in the third district, held that the facts and circumstances must be stated sufficient to satisfy the court, or officer to whom the application is made, that there is reason to

believe that the books, &c., which the party seeks to examine, do, in fact, contain material evidence.

The case of *Gould* agt. *McCarty* (1 *Kernan*, 575,) must be adverted to. The petition was nearly as indefinite and sweeping as that in the present instance. In addition to the comments of Mr. Justice INGRAHAM (*The People* agt. *The Rector*, &c., *ut supra*,) upon the case, it should be noticed, that the defendant submitted, to some extent, that the order should be made by admitting possession of "a private book, in which he made short entries of the purchase and sales of stock, or contracts therefor, and his ordinary check-book kept in the usual manner." An order, at special term of this court, directed an unlimited delivery of sworn copies of all entries, and papers containing entries, relating to the merits of the action. But, on appeal, the general term limited the discovery to the entries and memoranda in his check-book, or private memorandum-book, mentioned in his affidavit read in opposition. A subsequent judgment, had on disobedience of this order, was carried, by appeal, to the court of appeals, and the order there examined, and judgment affirmed. The points decided by the court of appeals were, that the Revised Statutes, as to discovery of books and papers, were yet in force, and not superseded by the Code, and that the superior court had the same authority as the supreme court under them.

There is another point equally decisive against the defendants, and to support the order appealed from. There is not, in the petition, a statement to show that the defendant does not possess the means of proving, by other competent evidence, the title or interest of the firm of Starling, McCulloch & Company, which will enable him to sustain his case. The opposing affidavit shows that one of the firm can be readily reached as a witness.

We consider some allegation of this nature to be indispensable.

In *Stalker* agt. *Gaunt* (12 *Legal Observer*, 132,) the subject was much considered. It was observed, in the next place, discovery was the mere instrument for obtaining evidence to

make a legal right available, without pronouncing a decision on that right. (*Hare on Discovery, p.* 110.) Hence it was essential that a bill for that purpose should state that it was in aid of some judicial proceeding. (*Attorney General* agt. *Rose,* 8 *Price,* 205; *Conderte* agt. *Watkins,* 5 *Mad.* 18.) "The Revised Statutes do not change this principle. There must be a suit pending in the supreme (or other) court when the petition is presented. The change, by permitting an application to the common-law court itself, instead of resorting to another tribunal, is but matter of convenient practice.

"Now, the foundation of such a bill was the inability of the party to establish his case without the discovery. It is said, generally, that it lies because he cannot otherwise prove the facts, or in aid of proof. The meaning of the last clause, I take to be, that the aid is necessary in order to establish one or more facts in a series of facts which the party must prove, or to supply a partial defect in the testimony as to one or more of such facts, or as to the single fact on which the right depends. Whether the suit was in the court of chancery, or in another court, was immaterial as to the rules which governed discovery."

I have carefully examined the following authorities: *Seymour* agt. *Seymour,* 4 *John. Ch. Rep.* 410; *Gelston* agt. *Hoyt,* 1 *John. Ch. Rep.* 543; *Leggett* agt. *Postley,* 2 *Paige,* 599; *Newkirk* agt. *Willis,* 2 *Ch. Cas.* 296; *March* agt. *Davidson,* 9 *Paige,* 580; *Bass* agt. *Bass,* 4 *Hen. & Mumf.* 475; *Lowe* agt. *Stebbins,* 9 *Paige,* 624; *Vance* agt. *Andrews,* 2 *Barb. Ch. Rep.* 370; *Duvall* agt. *Ross,* 2 *Mumf.* 290; *Norwalk Railroad Co.* agt. *Story,* 17 *Conn. Rep.* 213. While there are to be found some modifications of the rule, yet I apprehend that the rule stated in the explicit language of the chancellor, remains to this day substantially the doctrine upon the subject. "If a bill seeks discovery in aid of the jurisdiction of a court of law, it ought to appear that such aid is required. It is not denied, in this case, that every fact material to the defence at law, can be proved by the ordinary means at law, without resorting to the aid of this court. I should presume, from the bill, that

every material fact respecting the ownership of the vessel could be established without coming to this court; and such trials are not to be delayed, and discoveries required, when the necessity of such delay and discovery is not made to appear." (*Gelston* agt. *Hoyt*, 1 *John. Ch. R.* 546.)

The power, under the Code, to examine parties as witnesses was then adverted to, and it was concluded:

" Two important principles appear to me deducible from this examination of the subject. If the discovery is attainable by competent and available testimony, other than that of the party, a production of books and papers should not be allowed, · except under special circumstances. If it is attainable by the examination of a party as a witness, it should be also refused, except upon some special ground.".

The results in this case are fully approved of, and acted upon, by Mr. Justice HARRIS, in *The Commercial Bank* agt. *Dunham*, before cited.

And, in *McAllister* agt. *Pond*, (15 *How*. 299 ; 6 *Duer*, 702), Mr. Justice WOODRUFF says, " One of the first facts which should appear, on an application for the discovery of books or papers for the purpose of preparing for trial, is, that the applicant has not in his possession the same information, or, if he has, that he has not the means of establishing, by other available proof, the contents of such books and papers."

Again: " It is not stated that the plaintiff cannot prove, without the production sought, every fact which is material to his case."

We consider the present application to be entirely against settled rules, and that the order below ought to be affirmed ; nor is there anything in the case to justify our giving the party an opportunity to renew it.