NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.— May, 1882.

## DALE v. STOKES.

*In the matter of the probate of a paper propounded as the will of* JAMES STOKES, *deceased.*

The petitioner, who was contesting the probate of a paper propounded as the will of decedent, her father, applied for an order directing the tem-

porary administrator, her brother, who was also proponent, to produce and deposit in court, subject to examination by herself and her counsel, certain books and papers of the decedent, alleging, on information and belief, that the latter kept books of account and preserved letters, documents, and papers relating to the estate, of interest to him and his children; that he was, latterly, somewhat under the influence of his sons, including the respondent, one or more of whom kept said books; that the books and papers referred to were in the possession of respondent, who was unfriendly to her and permitted her opponents to examine the same for evidence in support of the will. while she was unable to obtain any such information; that she desired to ascertain, from an inspection, how far the books, etc., contained evidence material to the pending controversy, and also to satisfy herself as to the condition of the estate; that she could not specify, with more particularity, the documents referred to, because she had never seen any of them. It appeared that the only attempt which petitioner had made to obtain the desired inspection, was a letter from her counsel to the counsel of the administrator. asking when and where she could examine "the books and papers of the late James Stokes, his books of account and other papers;" to which it was replied that the extent to which documents of the estate should be furnished for examination was in the discretion of the Surrogate. The application was urged, not on the strength of any express statutory provision or decided case, but on the ground that both parties should enjoy the same privileges, and that the control of the court over the temporary administrator was broad enough to justify the order asked. *Held*,

1. That the powers of the Surrogate in the premises were exclusively such as were derived from statute.

2. That his *general* control of executors and administrators, so far as concerned the matter in discussion, depended upon Code Civ. Pro., §§ 2472, 2481, neither of which sections justified the granting of the relief asked.

3. That, so far as the proceeding was, substantially, one for discovery and inspection, it must be governed by Code Civ. Pro., §§ 803–809, and § 2538; under which sections, and the decisions, the petition was faulty for want of particularity, and in not stating facts showing the necessity of the inspection, etc.

4. That the letter of the administrator's counsel was not to be deemed a refusal to permit a proper inspection, in view of the sweeping character of the petitioner's demand.

5. That to grant orders of the character asked, under the circumstances presented, would be to interfere with the orderly administration of estates, and foster unnecessary and profitless litigation; and that the application should be denied.

THIS was an application by Dora S. Dale, who was

contesting the probate of the will of decedent, to compel the temporary administrator to produce certain documents. The facts appear sufficiently in the opinion.

THERON G. STRONG, *for Mrs. Dale.*

BUTLER, STILLMAN & HUBBARD, *for administrator.*

THE SURROGATE.—Mrs. Dora S. Dale, who is contesting the probate of a paper propounded as the will of her father, James Stokes, asks that the temporary administrator of his estate be directed to produce certain documents before the Surrogate. The petitioner alleges that the decedent, in his life-time, kept books of account of his personal transactions affecting the estate, and that he preserved divers letters, documents and papers of interest relating thereto, and otherwise of interest to him and to his children ; that, during the latter years of his life, decedent was, to a considerable extent, under the influence of his four sons, one of whom is the temporary administrator, and that said books of account, or a portion of them, were kept in whole or in part by one or more of said sons; that the said books and papers are in the possession and under the control of Anson P. Stokes, who is temporary administrator of the estate, and that the proponents of the will are permitted to examine such books and papers, and procure such evidence as they may find therein in support of the will ; that her brothers are unfriendly to her, and that she is unable to obtain through them any information whatever. All the foregoing allegations are made upon information and belief. The petitioner adds that she has been advised and believes that she is entitled to examine and inform herself of the contents of said books and papers—first,

to ascertain how far they may contain evidence material to the probate controversy ; and second, to satisfy herself as to the condition of the estate. She declares that she cannot specify with greater particularity the names of the books, or the description of the papers or letters she desires to inspect, because she has never seen any of them. She thereupon asks that an order be granted, directing that said books and papers be deposited in this court, subject to her examination and that of her counsel. The argument which has been made in her behalf is not claimed to be supported by the authority of any reported case. Indeed, the only precedent which is cited as furnishing a guide for the decision of the court upon this application, is the action of Surrogate Bradford, pending the contest over the probate of the Parish will.

At page 181, volume 1, of the report of that trial, appears the following statement: "The counsel for the contestants having heretofore required the Surrogate to order the production of all books of Henry Parish, and accounts and powers of attorney purporting to be executed by him subsequently to the attack spoken of in the proofs, and the Surrogate thereupon having ordered the party propounding the will and codicil to produce said books, so far as the same are within his power and control, to be deposited with the Surrogate, subject to the inspection of the counsel for the contestants, and subject to the further order of the Surrogate in relation thereto ; the said proponent now produces the following books." Then follows a short list specifying two books of account, a memorandum book, several check books and pass books, and two powers of attorney.

This is all the allusion to the matter, which I have found in the report of the trial. It does not appear whether the direction to bring these documents into court was with the consent of proponent's counsel, or despite his opposition, or whether the contestants had or had not previously made a definite and precise statement as to the number, kind and character of the books and papers whose production was sought, and as to the reasons why such production might properly be ordered by the Surrogate. It can scarcely be claimed, therefore, that the course of my distinguished predecessor at that trial established a legal precedent, which would sanction my favorable consideration of the present contested application.

My attention has been called to no other case, in which a Surrogate has been reported as exercising such power as is here invoked, and no cases have been cited, in support of any doctrine at all analogous to that upon which the present claim is sought to be maintained. Indeed, the contestant's counsel frankly avow that they found their application solely upon the ground of its reasonableness and equity, and not upon the authority of decided cases, or the specific requirements of the statute. They insist that their client ought to be accorded the same privileges which are enjoyed by the proponents, and they urge that the control of the Surrogate over the temporary administrator is broad enough to justify his issuance of the order prayed for.

I have been much impressed with the urgency of this appeal, and have diligently striven to ascertain what of right ought to be done in the premises. It has been so frequently and so emphatically decided that this court

has no jurisdiction save what is conferred upon it by statute, that a citation of the authorities which maintain that proposition is quite unnecessary.

Now the power of the Surrogate over executors and administrators (so far as concerns the matter under discussion), is granted by sections 2472 and 2481 of the Code. By subdivision 3 of the former section, he is empowered to direct and control the conduct of those officers, but he is cautioned by the closing words of the section that "this jurisdiction must be exercised in the cases, and in the manner, prescribed by statute." ·

By subdivision 5 of section 2481, the Surrogate is also authorized "to require by order an executor or administrator to perform any duty imposed upon him by statute, or by the Surrogate's court under authority of a statute."

Does either of these sections contain any such grant of power as would justify the entry of an order in conformity with this petition? It is manifest that, in considering the nature and extent of the control of the court over the temporary administrator of this estate, it is an immaterial circumstance that such temporary administrator is a proponent of the will, and one of the next of kin and heirs at law of the decedent. I mean by this that it is solely in his capacity as temporary administrator, and not at all in his capacity as party, that the Surrogate can be deemed to have any such authority as he is here asked to exercise. In other words, the Surrogate has precisely the same right of control over Anson P. Stokes that he would have had over any other person, not a party to this contest, who might have been appointed temporary administrator. Of course, the cir-

cumstance that the interests of the present administra-
tor are to some extent adverse to those of the petitioner,
may of itself furnish a reason for the exercise of what-
ever power the statute confers, but that circumstance
does not enlarge the lawful scope of such power in the
slightest degree.

The claim of contestant's counsel seems to me to
ignore the truth of this proposition. For, while this ap-
plication is in form a prayer that the court will control
the action of one of its officers, in substance it asks the
aid of this court, as against an adverse party to the con-
troversy over the probate; and this aid, as it seems to
me, the court is powerless to give upon the present ap-
plication. The petition declares that "during his life-
time the decedent kept books of account of his personal
transactions affecting his estate, and preserved letters,
documents and papers of interest relating thereto, and
otherwise of interest to him and to his children;" and
it asks that "an order be granted directing that said
books and papers be deposited in court, subject to the
examination of petitioner and her counsel," for the
avowed purpose of discovering "how far they may con-
tain evidence material to this controversy," and in order
that she may thereby "satisfy herself as to the condition
of the estate." In so far as this petition substantially
seeks for discovery and inspection of such books and
papers as the proponent would have been entitled to hold
against the claim of any other person who might have
been appointed temporary administrator, if he himself
had not been named, it is plainly *coram non judice.*

By section 2538 of the Code, its provisions touching
inspection and discovery (§§ 803 to 809, inclusive) are

made applicable to this court. These provisions take the place of section 6, title 1, ch. 2, part 3, of the Revised Statutes, whereby the Surrogate was authorized " to issue subpœnas to compel the production of any paper material to any inquiry pending in his court."

By section 803, "a court of record . . . has power to compel a party to an action pending therein to produce and discover, or to give to the other party an inspection and copy, or permission to take a copy, of a book, document, or other paper in his possession, or under his control, relating to the merits of the action or of the defense therein."

Section 804 provides that the general rules of practice must prescribe the cases in which a discovery or inspection may be so compelled, and the proceedings for that purpose, where the same are not prescribed in this act. These sections, in cases where they are applicable, furnish the only means provided by existing laws for obtaining the relief to which they relate. They are in substantial accord with the statutory provisions for which they are a substitute, and the scope and effect of those statutory provisions have been repeatedly the subject of adjudication by our courts.

It has been held that a petition for such discovery and inspection must state facts showing the necessity thereof ; that such petition is faulty and ineffectual if it only alleges that the party "expects" to prove, or "thinks" he can prove, the facts in question ; that the documents whose production is demanded must be specially set forth, and with sufficient particularity to enable the opposite party to know with certainty what is wanted ; and that it is not enough to assert that they contain

evidence relative to the merits of the action, but that it must appear wherein such relation consists (see Mott *v.* Consumers' Ice Co., 52 *How. Pr.*, 148; affi'd, *Id.*, 244 ; Davis *v.* Dunham, 13 *Id.*, 425 ; Hoyt *v.* American Exchange Bank, 1 *Duer*, 652 ; Jackling *v.* Edmonds, 3 *E. D. Smith*, 539 ; Cassard *v.* Hinman, 6 *Duer*, 695 ; Brooklyn Life Ins. Co. *v.* Pierce, 7 *Hun*, 236 ; Morrison *v.* Sturges, 26 *How. Pr.*, 177 ; Harbison *v.* Von Volkenburgh, 5 *Hun*, 454 ; Walker *v.* Granite Bank, 44 *Barb.*, 39 ; Gelston *v.* Marshall, 6 *How. Pr.*, 398 ; Opdyke *v.* Marble, 44 *Barb.*, 64 ; Brevoort *v.* Warner, 8 *How. Pr.*, 321 ; Phelps *v.* Platt, 54 *Barb.*, 557 ; Wilkie *v.* Moore, 17 *How. Pr.*, 480 ; Pegram *v.* Carson, 10 *Abb. Pr.*, 340 ; Low *v.* Graydon, 14 *Id.*, 443 ; Brownell *v.* Bank of Gloversville, 20 *Hun*, 517).

In the last named case, the court makes use of this language : "This is evidently a fishing examination, to enable the plaintiffs to discover something, if there be anything worthy of discovery. It has been frequently held that such an examination should not be granted."

Now, of just such a character as is here criticised is the examination which is solicited in the present case. This, indeed, was admitted by counsel for the petitioner, upon the argument of this motion. It was urged, however, that she did not found her claim upon the statutory provisions relating to discovery, but upon the broader ground that this court, in the furtherance of impartial justice, should see to it that proponents and contestants are in all respects put upon an equal footing.

As has been already intimated, however, my views as to what equity demands can be made effective only so far as they accord with what the statutes permit, and the

sections above quoted from the Code seem to forbid my granting the present application. In declaring this decision, I do not mean to intimate what action might be taken upon a petition more limited in its scope and more definite in its terms. But, as the denial of this motion for the cause assigned may be followed by similar applications in this case, or in other cases, it seems proper to state that, even if the power were unquestioned, I should not feel justified in granting any such order as is here asked, under the circumstances disclosed by the motion papers.

A broad, sweeping direction that the books, papers, letters and documents which were in the possession of a decedent at his death, and are of interest to him and his children, should be taken from the custody of the executor or administrator, and deposited in this court, is a direction which in my judgment should not be made, even though the law warranted it, save under very extraordinary circumstances.

No such extraordinary circumstances have been discovered to exist in the case at bar. Since the temporary administrator entered upon his duties, it can scarcely be said to appear that the contestant or her counsel have been refused leave to examine the books of account of decedent, or any other books or papers relating to his estate or its administration. So far as was disclosed upon the argument of this motion, the sole attempt of the contestant to obtain an inspection of any such documents since the administrator was appointed, and the sole act on his part which can be regarded as a discouragement of that attempt, are evidenced by two letters which have passed between himself and the petitioner's counsel.

The latter asked to be informed when and where Mr. Stokes would afford his client "an opportunity of examining the books and papers of the late James Stokes, his books of account and other papers." In reply, the administrator stated that he had been advised that his custody as administrator was that of the court which appointed him, and that the extent to which he should furnish for examination documents pertaining to the estate was within the discretion of the Surrogate. I do not think that this letter, in view of the broad request to which it is an answer, can be fairly construed as a refusal of petitioner's application.

Even if this court, therefore, were unrestrained by the statute, it would not feel justified, upon the evidence now presented, in directing the production and deposit of any of the books, papers, letters and documents which were connected with the business and private life of the decedent.

No special features are shown to exist in the present case, which take it out of the category of other contested cases; and it would establish a troublesome, and, all in all, an unjust precedent, to hold that a sweeping order of this nature could be made at the instance of any next of kin, heir at law, or other person interested, who might see fit to apply for it under circumstances like the present. Such a course would seriously interfere with the orderly administration of estates, and would foster unnecessary and profitless litigation.

Motion denied.